## STATE v. HENRY HORN.

*Indictment for Murder—Threats—Subsequent Reconciliation—Sudden Provocation—Manslaughter.*

1. While threats made in a thoughtless and bragging manner should not receive too much consideration from a jury, yet they are competent and proper evidence, and what weight they should have with a jury is a question for them under proper instructions from the Court and a consideration of all the circumstances under which they were made.

2. Where, in the trial of a prisoner charged with murder committed in 1883 (before the passage of the Act of 1893) the evidence showed that defendant had made threats against the life of the deceased but that thereafter, on the day of the killing, their relations were friendly and that the immediate provocation to the homicide was the shooting of defendant's brother by the deceased; *Held*, that the jury should have been instructed that, if they found these facts, defendant could be convicted of manslaughter only, inasmuch as, after the reconciliation, the law would presume the crime to be due to the new and sudden provocation and not to previous malice.

INDICTMENT for murder found in 1883, and tried before *Brown, J.*, and a jury, at October Term, 1894, of ROBESON Superior Court. There was evidence tending to show that previous to and on the day on which the prisoner shot and killed David Butler, the two men had been on unfriendly terms and that the prisoner had said that he intended to kill Butler before many days. One witness testified that on the morning of the day on which deceased was killed prisoner had said that he had a yellow jacket in his pocket that was going to sting Butler before night. There was evidence, also, tending to show that on the day of the homicide the relations of the parties were friendly and that prisoner had attempted to pacify the deceased who had been drinking and had told him that he was a friend of his and that he, the prisoner, had had nothing to do with a difficulty which deceased had with prisoner's brothers. The evidence showed that just before the killing, deceased had shot a brother of the prisoner and one witness testified that when the prisoner shot and killed the deceased, the latter was attempting to shoot the prisoner and another brother of the prisoner.

The prisoner testified in his own behalf as follows : "The killing of Butler took place near my store ; don't know who came there first, Butler or myself ; think we went there about the same time. Butler said to me : 'let me see you a little. I suppose you are going to give me a good thrashing about the difficulty between me and John Horn ?' I said it was not so. Have not said a word against you. You and I are good friends. Let us remain so. I have had nothing to do with yours and John's difficulty. I have a family to provide for. Butler said 'Damn your family. My father has a family'. Butler then had his hand on his pistol and cursed me. I said, we have been good friends, let us remain so. Butler said, 'your damned brother has

sworn to lies about me,' and said he would shoot the Horn boys, and put his hand on his pistol. I said if that is what you are up to I'll leave. I tried to pacify Butler two or three times that day, and told him I wanted us to remain friends; that I had nothing to do with his troubles with my brother. I was friendly up to the time he shot James and attempted to shoot me. I went off to the gin about noon. Butler was not at the store when I returned. Gaddy wanted to get in the store to get some flour. Asked him if he could wait until I got my dinner, and he said yes. Got my dinner, and went to get in the store to get the flour for Gaddy. As I was going into the store Butler caught me by the arm, cursed me and threatened to kill the last one of the damned Horn boys; and said, 'the last one of you are a sheep-eating set.' I said let me alone. Don't wish any trouble with you. I went into the store. While I was getting the flour some one said Butler had his pistol drawn on Jim Horn. I cannot say Butler had his pistol drawn on Jim Horn. I asked Butler please not to shoot. Butler's pistol did not fire the first time, but fired the second time, when he shot Jim Horn, who was my brother. Butler then pointed his pistol at me twice. It snapped the first time. The second time he threw up his pistol on me I shot him. I never had the conversation with Campbell. Never had any such conversation with Ed Gaddy. Was very friendly with Butler. When I went to the gin I did not expect to see Butler any more that day. Had nothing against Butler. I went away; was gone for a few years; did not run away; came back and voluntarily surrendered."

No one testified that Henry Horn was not friendly with Butler on the day that Butler was killed, or that Henry Horn had ever done or said anything to show that he was

unfriendly with Butler, except as it may appear as herein recited.

The prisoner contended that he was not guilty of anything more than excusable homicide, and if the jury should be against him on that position they could not find him guilty of anything more than manslaughter. Prisoner's counsel during his argument to the jury turned to the Court and requested that the Court charge the jury that there was no evidence of murder in this case, and that his Honor should so charge the jury, and take the question of murder away from the jury. The Court stated in reply to the questions of the counsel that the Court declined to charge the jury that there was no evidence of murder in this case to be considered by the jury, to which remark of the Court the prisoner duly excepted.

Prisoner's counsel further contended, and argued to the jury as well as to the Court, that in no view of the evidence could the prisoner be found guilty of murder, because all the malice that could be implied was from the killing with a pistol, and all the expressed malice that could be found from the evidence, was, as a question of law, rebutted by the facts, as proven by the State as well as the defendant's witnesses.

The Court in reply to this argument, and addressed to it by the prisoner's counsel, said to the counsel that the counsel had overlooked in this argument one view taken by the Solicitor, which was that the State contended that it had shown evidence of actual expressed malice, to be considered by the jury, other than that legal malice implied by the law from the use of a deadly weapon. Prisoner's counsel duly excepted to this remark of the Court.

Prisoner's counsel virtually requested the Court to charge that the shooting of James Horn by Butler and the almost immediate shooting of Butler by Henry Horn, the brother

of James Horn, and the further fact that Henry Horn was friendly with Butler after the alleged threats and conversations rebutted any implied malice, and also any actual expressed malice that could be proven by the witnesses introduced in the case.     This request was read by counsel from a written statement of the law, as contended for by him, and which he used in arguing the case to the jury and to the Court.     The Court then charged the jury as follows: The crimes of murder and manslaughter were defined, and the jury were told that the case was to be tried under the law as it existed in this State prior to the Act of 1893. That the prisoner has admitted that he killed the deceased, David Butler, with a pistol in Robeson County, in September, 1883.     This puts the burden of proof upon the prisoner to show, to the satisfaction of the jury, but not beyond a reasonable doubt, that such killing was justified or excusable ; or to show such circumstances as will reduce the killing from murder to manslaughter.     Prisoner is not required to show anything beyond a reasonable doubt.

The Court then charged that malice is presumed from the killing with a pistol under the law as applicable to this case ; and in addition, it is contended upon the part of the State, that it has shown evidence of expressed malice and threats before the homicide.     The Court then recited to the jury the facts in evidence relied upon by prisoner's counsel in argument, sustaining the prisoner's plea that the killing was done in self-defense.     The Court recited the facts in evidence relied upon by the Solicitor in his argument, tending to show that the homicide was murder, and also recited the evidence in the case bearing upon the views of manslaughter.     The Court then charged:

As to murder: 1. If the jury believe the prisoner determined before he went to the store that he would kill Butler, on the day of the homicide, and armed himself for this

purpose and went to the scene of homicide with such intent
and purpose, and entered into the difficulty to carry out his
purpose, and succeeded in such preconceived purpose of
killing the deceased, the prisoner is guilty of murder.

2. If the deceased and James Horn had a difficulty, and
after the difficulty was over, the deceased was walking
towards his horse, although a pistol in his hand, and the
prisoner, actuated by malice, and for the purpese of carry-
ing out a previously formed determination, intent and plan
to kill the deceased, came out of the store, shot and killed
him, the prisoner is guilty of murder.

As to manslaughter: 3. If the prisoner was not moved
and actuated by expressed malice towards the deceased,
and was not carrying a previously formed plan to kill him,
but saw that his brother and deceased were engaged in a fight,
and that the deceased fired at his brother, James Horn, and
the prisoner ran out of the store, and, acting under the excite-
ment of the moment, or the anger engendered, fired and killed
the deceased as he was walking away, and towards his horse,
the prisoner would be guilty of manslaughter. It would
also be manslaughter provided the jury shall believe that
the prisoner, acting in good faith, fired in defense of his
brother, and the jury shall be of the opinion that at the
time of firing the prisoner had no reasonable grounds to
believe that Butler would do his brother any further bodily
harm.

These were the two views of manslaughter presented to
the jury by the Court.

As to self-defense : 4. The Court explained that when a
man is attacked by another with a pistol he is not required
to retreat, but may slay his adversary : and then charged,
if the prisoner saw his brother engaged in defending him-
self against an attack by the deceased, who was armed with
a pistol (the brother, James Horn, being unarmed, as the

evidence, if believed, shows, except in respect to the stick, testified to by the witnesses), and if the prisoner believed, and, in the opinion of the jury had reasonable grounds to believe, that the deceased was trying to kill his brother James, or to do James some great bodily harm, then the prisoner had a right to fire and kill the deceased in defence of his brother, and it would be excusable homicide, and the prisoner not guilty.

If the jury believe that the prisoner had formed a previous plan to kill the deceased, and was not then engaged in carrying out such plan and resolution, and that the prisoner came out of the store, although armed with a pistol in hand, and that the deceased turned on prisoner as testified to, and drew his pistol on the prisoner, so that the prisoner had reason to believe that the deceased was endeavoring to shoot prisoner, then the prisoner had a right to shoot and kill the deceased and it would be excusable homicide, and the prisoner not guilty.

There was a verdict of guilty of murder and a motion for new trial, which was refused and from the judgment thereon and sentence of death defendant appealed.

*The Attorney General,* for the State.

*Messrs. French & Norment* and *Herbert McClammy,* for defendant (appellant).

FURCHES, J.: We do not think defendant's exceptions, to the reply of the Court to the questions asked the Court during the argument of the case to the jury, can be sustained. We do not know whether they are excepted to as being out of time or as being erroneous. But we do not think they can be sustained on either ground. If the exceptions are put on the question of time, it would seem they were made in response to questions addressed to the

STATE *v.* HORN.

Court by defendant's counsel.   And it may fairly be inferred that the counsel for defendant wished to know the views of the Court at that time, that he might the better know how to direct his argument, and that the Court so understood him.   And whether this was the object of counsel or not, it is a reasonable inference to be drawn from the questions, and we do not think defendant has any just ground for complaint.   Nor do we think these exceptions can be sustained upon the ground of error in law, as in our opinion there was evidence in the case involving murder, manslaughter and excusable homicide.

It was admitted that the defendant killed the deceased David Butler with a pistol.   This threw the burden on the defendant.   The State then offered two witnesses, whose testimony tended to show previous threats and express malice on the part of defendant.   And while these were denied by defendant, he offered evidence tending to show that after the alleged threats (which the State insisted showed express malice) the deceased and the prisoner had talked the matter of John Horn over, that prisoner had assured the deceased that he had nothing to do with that trouble, telling the deceased that they had always been friends, and that he did not want any trouble with the deceased.   And the Court in the case on appeal states that "no one testified that Henry Horn was not friendly with Butler on the day that Butler was killed, or that Henry Horn had ever done or said anything to show that he was unfriendly with Butler, except as it may appear as herein recited."   Evidently referring to the testimony of Campbell and Gaddy.   And defendant insisted that if it should be found by the jury that defendant had made the alleged threats, that it also appeared that he (defendant) had become reconciled and was friendly with the deceased on the day of the homicide; and asked the Court to charge

that the law inferred the killing was from the recent prov-
ocation. This the Court declined to do. And upon this
view of the case we think there was error.

We do not think Courts and juries should give too much
weight to threats—often made in a thoughtless, bragging
manner, without any purpose of ever carrying them into
execution, and sometimes made in the moment of passion,
soon to pass away with the passion that produced them.
But still they are competent and proper evidence, and as to
what weight they shall have is a question for the jury, con-
sidered under proper instructions from the Court and all
the circumstances under which they were made. This evi-
dence made it necessary to submit the question of murder
to the jury.

But to remove this testimony from the case, it would
seem that the offence would be reduced to manslaughter, as
the provocation of defendant, seeing the deceased shoot down
his brother, or seeing his brother and the deceased a few
moments after the deceased had shot down defendant's
brother, was very great. Therefore it became of the utmost
importance in the trial that the Court should properly
charge and instruct the jury as to the law of previous
threats tending to show express malice, as affected by an
after reconciliation. This the Court did not do. The
Court should have charged the jury that every question of
fact necessary for the conviction of defendant and every
question of fact necessary for defendant's defense, should
be found, from the evidence in the case, to be true. That
if the defendant did make the threats, as testified to by
the witnesses for the State, then this would tend to show
express malice on the part of the defendant. But if they
should so find, then they should consider the evidence
offered by the defendant tending to show a reconciliation
on the part of the defendant, and that defendant after the

threats was friendly with the deceased. And if they should find from the evidence that he was, then the law no longer attributed the killing to previous malice, but inferred it was from the new and sudden provocation. *State* v. *Barnwell*, 80 N. C., 466. And if it was done under the new provocation, the defendant would not be guilty of murder but only of manslaughter. *State* v. *Hill*, 4 Dev. & Bat., 491; *State* v. *Ta-cha-na-tah*, 64 N. C., 614; *State* v. *Jacob Johnson*, 2 Jones, 247; *State* v. *Matthews*, 78 N. C., 523.

In this opinion we have not considered the question of self-defense, as it was not necessary that we should do so, and merely mention it here to show that we have not considered it.

We notice His Honor (doubtless through inadvertence, as we find the same thing in other cases) in charging the jury uses the expression "believe" where we think he should have said, if you "find as a fact from the evidence." We merely mention this, as we see it in this case, and in other cases. But in this opinion we have laid no stress upon this matter, and do not consider it in making up our judgment.

There is error in the matter pointed out in this opinion, for which defendant is entitled to a new trial.

New Trial.