STATE OF NORTH CAROLINA v. GERALDINE STANLEY

No. 8117SC852

(Filed 16 February 1982)

**1. Homicide § 21.1— second degree murder—sufficiency of evidence**

In a second degree murder case, the trial court did not err in denying defendant's motions for nonsuit and for appropriate relief where the evidence tended to show that defendant and the deceased had been drinking and argued together; that defendant stated several times that deceased killed himself; that defendant also stated that the gun was in her hand when it went off; that expert testimony indicated that the gunshot wound was not compatible with one that was self-inflicted; and that the gun was found in the victim's right hand, but the gunshot wound was on the left side of his head.

**2. Homicide § 21.9— involuntary manslaughter—sufficiency of evidence**

The trial court did not err in denying defendant's motion for appropriate relief from a verdict of involuntary manslaughter where the defendant's own testimony disclosed that she and the deceased struggled with a gun, it went off and, after scuffling, the gun was in her hand.

APPEAL by defendant from *Washington, Judge.* Judgment entered 26 March 1981 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 15 January 1982.

Defendant was indicted for first-degree murder, but at trial the State elected to proceed on a charge of second-degree murder. Defendant was found guilty of involuntary manslaughter, and appeals from the imposition of a sentence of imprisonment for not less than two years nor more than four years.

STATE'S EVIDENCE

At trial, the State's evidence tended to show the following: The deceased, Terry Scott "Pete" Wilkerson, was defendant's

boyfriend. He had a jealous nature and a reputation for fighting. On 29 June 1980 defendant, her mother Elsie Stone, and the deceased had been to a local tavern, the Red Dog. They had been drinking, and defendant and the deceased argued about her talking to other men. When they returned to defendant's home, she and the deceased remained in her car. Defendant told law enforcement officers and Wilkerson's mother that Wilkerson told her if he could not have her, he did not want to live and then shot himself in the head with a pistol defendant kept in her car. The wound was on the left side of Wilkerson's body; the gun was found in his right hand. Although Wilkerson was alive when the ambulance arrived, he later died at the hospital.

Dr. Jerome Tifp, a pathologist with the State Medical Examiner's office, and Douglas Branch, a firearms expert with the State Bureau of Investigation, testified that, in their opinions, the gunshot wound to the deceased was not self-inflicted since there was no gun residue around the wound.

Robert Gray, Captain of the Sheriff's Department, testified that he had interviewed defendant on the night the shooting occurred, 29 June 1980, and again on 9 July 1980. On both occasions defendant stated that Wilkerson had shot himself. After receiving the autopsy report, Captain Gray and another officer talked to defendant on 21 July 1980. After being advised of her constitutional rights, defendant made a statement to the officers which she signed and dated. She told them that the deceased had given her the gun as they sat in the car, telling her to shoot him. They struggled with the gun and when the gun was in her hands, it went off, wounding the deceased. She thought her mother had placed the gun in Wilkerson's hand before law enforcement officers arrived.

## DEFENDANT'S EVIDENCE

Defendant testified that on the way to her house from the tavern, Wilkerson was accusing her of somebody following her home. He was angry and said defendant did not care for him or love him. Defendant went inside the house for a few minutes, leaving Wilkerson in the car. When she returned to the car, he told her he was going to shoot himself and held the gun to his head. She tried to calm him, to keep him from shooting himself.

They struggled over the gun, and it fired, striking Wilkerson. She never put her hand on the trigger.

Twelve character witnesses testified in defendant's behalf.

*Attorney General Edmisten by Assistant Attorney General Daniel C. Oakley for the State.*

*Robert S. Cahoon for defendant appellant.*

CLARK, Judge.

[1] Defendant assigns as error the failure of the trial court to grant her motions for nonsuit and for appropriate relief. She contends that the State's evidence, excluding her own statements, was insufficient to withstand the motion for judgment as of nonsuit. She argues that the statements were exculpatory and were not disproved by any of the State's evidence.

Upon motion for judgment as of nonsuit, all admitted evidence must be considered in the light most favorable to the State, and the State must be given the benefit of every reasonable inference drawn therefrom. Contradictions and discrepancies in the evidence are matters for the jury and do not warrant nonsuit. *State v. May,* 292 N.C. 644, 235 S.E. 2d 178, *cert. denied,* 434 U.S. 928, 54 L.Ed. 2d 288, 98 S.Ct. 414 (1977). There must be substantial evidence of all material elements of the offense in order to overcome the motion to dismiss. *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431 (1956).

In order to establish the crime of second-degree murder, the State must prove beyond a reasonable doubt that there was an unlawful killing of a human being with malice but without premeditation and deliberation. G.S. 14-17. If the killing was done with a deadly weapon, it will be presumed that the killing was unlawful and done with malice. *State v. Hodges,* 296 N.C. 66, 249 S.E. 2d 371 (1978).

The State's evidence in this case tended to show that defendant and the deceased, Terry Scott Wilkerson, had been drinking on 29 June 1980 and were arguing with each other. Although defendant stated on several occasions that Wilkerson killed himself, she also stated that the gun was in her hand when it went off. Expert testimony indicated that the gunshot wound was

not compatible with one that was self-inflicted. The fact that the gun was found in Wilkerson's right hand, but the gunshot wound was on the left side of his head also raises questions concerning the alleged suicide.

While defendant's statements to law enforcement officers do contain some exculpatory evidence, we believe that the physical factors involved, the expert testimony and the inculpatory portions of defendant's statements were sufficient to permit the jury to draw the reasonable inference that defendant unlawfully and with malice killed Terry Scott Wilkerson. While some of defendant's statements may tend to exculpate her of second-degree murder, this does not prevent the State from showing that the facts concerning the homicide were different from what the defendant stated. If the State introduces evidence that defendant is guilty of each element of the offense, the exculpatory statements do not warrant nonsuit. *State v. Cooper*, 273 N.C. 51, 159 S.E. 2d 305 (1968); *State v. Wilson*, 264 N.C. 373, 141 S.E. 2d 801 (1965). Although the jury did not convict defendant of this specific offense, we hold that the State's evidence was sufficient to overcome the motion for judgment as of nonsuit and to submit the issue to the jury.

[2] We also find no merit in defendant's contention that the trial court erred in denying her motion for appropriate relief from the verdict of involuntary manslaughter. The defendant's own testimony disclosed that she and the deceased struggled with the gun, it went off and after the scuffling, the gun was in her hand. It is well-established that one who points a loaded gun at another, although without the intention of discharging it, commits manslaughter if the gun goes off accidentally and kills the other. *State v. Stimpson*, 279 N.C. 716, 185 S.E. 2d 168 (1971). We conclude that there was sufficient evidence showing a wanton or reckless use of a firearm so as to support the verdict of the jury.

In the trial of defendant, we find

No error.

Judges ARNOLD and WHICHARD concur.