STATE OF NORTH CAROLINA v. STEPHEN NED ALLEN

No. 8523SC141

(Filed 1 October 1985)

**1. Homicide § 21.7— second degree murder—malice—evidence sufficient**

There was sufficient evidence of second degree murder where defendant went to the victim's house and demanded that the victim let him have certain furniture in the house; the victim refused and defendant left; defendant went drinking and carousing with several different people and borrowed a pistol at his brother-in-law's house; defendant stopped alongside the road and test-fired the gun; defendant then went back to the victim's house, held up the pistol,

State v. Allen

cocked it, and pointed it at the victim's face when the victim answered the door; defendant demanded his furniture, the victim said "I dare you" and grabbed defendant's arm; the cocked pistol discharged; the medical evidence showed that the bullet entered through the mouth and exited from the victim's neck having shattered the spinal cord; the victim fell; and defendant ran. Intentionally pointing a loaded, cocked pistol at an adversary's head could be seen as an act demonstrating wickedness, hardness of heart, cruelty or a mind deliberately bent on mischief from which the jury could properly infer malice.

**2. Constitutional Law § 31— denial of funds for private investigator—no error**

The trial court did not err in a prosecution for murder by denying defendant's motions for the appointment of a private investigator at State expense where defendant's theory was that although his gun discharged, the bullet did not strike the victim and that someone came later and killed the victim; defendant's theory was based on street talk that defendant had informed on several people currently on trial for drug charges; that some neighbors had heard more than one shot the night the victim was killed; that the bullet jacket found could not be positively identified as coming from defendant's gun; that there was a bullet hole in the kitchen window of the victim's house; that the medical examiner initially believed the victim had been shot from behind; that a black pickup had been seen parked near the victim's that night; and that a black pickup had been involved in an incident with the defense attorney investigating this case. There was nothing in defendant's theory which, even if proved, would be inconsistent with the version of events as found by the jury. G.S. 7A-450(b).

**3. Arrest and Bail § 9— murder—denial of bail—no abuse of discretion**

In a prosecution for first degree murder in which defendant was convicted of second degree murder, the trial court did not abuse its discretion by denying defendant's requests for the court to set bond where the evidence available to the court prior to trial tended to show first degree murder. Furthermore, defendant showed no prejudice from his pretrial incarceration in that no allegation was made as to how defendant could have assisted in his own defense any more than he did.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 11 October 1984 in Superior Court, ASHE County. Heard in the Court of Appeals 23 September 1985.

Defendant was arrested on 12 May 1984 and charged with the first degree murder of Gene Hart. During pre-trial proceedings defendant made repeated motions for bond to be set, and two motions for the court to appoint at State expense a private investigator to help in the preparation of his defense. These motions were all denied.

At the close of the State's evidence and the close of all the evidence, defendant made a motion to dismiss for insufficient evi-

dence. These motions were denied. The trial judge instructed the jury as to first degree murder, second degree murder and involuntary manslaughter. The jury returned a verdict of guilty of second degree murder, and defendant was sentenced to fifty years imprisonment. Defendant appeals.

*Attorney General Thornburg by Assistant Attorney General Steven F. Bryant for the State.*

*Appellate Defender Adam Stein by Assistant Appellate Defender Geoffrey C. Mangum for defendant appellant.*

PARKER, Judge.

[1] Defendant first argues that the trial court erred in denying his motion to dismiss as to second degree murder, claiming the evidence, when viewed in the light most favorable to the State, is sufficient to convict only of involuntary manslaughter.

Involuntary manslaughter is the unintentional killing of a human being without either express or implied malice by some unlawful act not amounting to a felony or naturally dangerous to human life, or by an act or omission constituting culpable negligence. *E.g., State v. Watson,* 310 N.C. 384, 312 S.E. 2d 448 (1984). In *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963), our Supreme Court said:

> It seems that, with few exceptions, it may be said that every unintentional killing of a human being proximately caused by a wanton and reckless use of firearms, in the absence of intent to discharge the weapon, or in the belief that it is not loaded, and under circumstances not evidencing a heart devoid of a sense of social duty, is involuntary manslaughter.

*Id.* at 459, 128 S.E. 2d at 893.

In comparison, second degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation. *E.g., State v. Hutchins,* 303 N.C. 321, 279 S.E. 2d 788 (1981). The specific intent to kill is not an essential element of either second degree murder, *State v. Lang,* 309 N.C. 512, 308 S.E. 2d 317 (1983), or involuntary manslaughter. *Watson* at 398, 312 S.E. 2d at 457. However, neither crime exists in the absence of some intentional act in the chain of causation leading to death.

*State v. Wilkerson,* 295 N.C. 559, 580, 247 S.E. 2d 905, 917-918 (1978). For that intentional act to support a conviction for second degree murder, it must be sufficient to show malice. *Id.* Involuntary manslaughter differs from second degree murder only in that malice is present in the latter but not the former. *State v. Setzer,* 42 N.C. App. 98, 256 S.E. 2d 485, *cert. denied,* 298 N.C. 571, 261 S.E. 2d 127 (1979).

Malice is an often discussed and sometimes ill-used term in the law of homicide. In her dissenting opinion in *State v. Wrenn,* 279 N.C. 676, 684-689, 185 S.E. 2d 129, 133-136 (1971), Justice, later Chief Justice, Sharp discussed malice in a passage which has been cited and quoted with approval numerous times since. She wrote:

> Malice has many definitions. To the layman it means hatred, ill will or malevolence toward a particular individual. To be sure, a person in such a state of mind or harboring such emotions has actual or particular malice. In a legal sense, however, malice is not restricted to spite or enmity toward a particular person. It also denotes a wrongful act intentionally done without just cause or excuse; "whatever is done 'with a willful disregard of the rights of others, whether it be to compass some unlawful end, or some lawful end by unlawful means constitutes legal malice.'" It comprehends not only particular animosity "but also wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief, though there may be no intention to injure a particular person."

*Id.* at 686-687, 125 S.E. 2d at 135 (citations omitted).

In the instant case the evidence tended to show that on the evening of 11 May 1984, defendant went to Hart's house and demanded that Hart let him have certain furniture in the house. Hart refused and defendant left. Defendant then went drinking and carousing with several different people and at one point stopped at his brother-in-law's house. At his brother-in-law's house, he borrowed a pistol. Defendant stopped alongside the road and test-fired the gun. Defendant then went back to Hart's house. When Hart answered the door, defendant held up the pistol, cocked it and pointed it at Hart's face. Defendant demanded his furniture. Hart said, "I dare you" and grabbed defendant's arm causing the

cocked gun to discharge. The medical evidence showed that the bullet entered through the mouth and exited from the victim's neck having shattered the spinal cord. Hart fell; defendant ran.

When the evidence is viewed in the light most favorable to the State, as it must be on defendant's motion to dismiss, *State v. Stanley*, 56 N.C. App. 109, 286 S.E. 2d 865 (1982), a rational jury could find the existence of the element of malice. Intentionally pointing a loaded, cocked pistol at an adversary's head could be seen as an act demonstrating wickedness, hardness of heart, cruelty or a mind deliberately bent on mischief from which the jury could properly infer malice. *Wrenn, supra.*

[2] Defendant's next assignment of error is that the trial court erred in denying his motions for the appointment of an investigator at State expense. Defendant moved on 14 June and again on 22 August for funds to hire an investigator to assist in the preparation of his defense. Both motions were denied.

G.S. 7A-450(b) provides: "Whenever a person . . . is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation." As applied to defense requests for private investigators, the statute has been interpreted to require the appointment of an investigator for the defendant at State expense only when there is a reasonable likelihood that a private investigator will materially aid defendant in the preparation or presentation of evidence or that without such help it is probable the defendant will not receive a fair trial. *State v. Gardner*, 311 N.C. 489, 319 S.E. 2d 591 (1984). The appointment should be made "with caution and only upon a clear showing that specific evidence is reasonably available and necessary for a proper defense." *State v. Tatum*, 291 N.C. 73, 82, 229 S.E. 2d 562, 568 (1976).

Defendant here alleged a need for a private investigator to look into allegations that the victim had "underworld connections" and several enemies. Defendant's theory was that although his gun discharged, the bullet did not strike Hart and that someone came later and killed Hart. Defendant based this theory on "street talk" that defendant had informed on several people currently on trial for drug charges; that some neighbors had heard more than one shot the night Hart was killed; that the bullet

jacket found could not be positively identified as coming from defendant's gun; that there was a bullet hole in the kitchen window of Hart's house; that the Medical Examiner initially believed Hart had been shot from behind; and that a black pickup had been seen parked near Hart's that night and a black pickup had been involved in an "incident" with the defense attorney while he was investigating his client's case.

These facts and speculations fall far short of the requirement of showing "specific evidence reasonably available and necessary for a proper defense." There is nothing in this theory which, even if proved, would be inconsistent with the version of events as found by the jury. "The State is not required by law to finance a fishing expedition for defendant in the vain hope that something will turn up." *State v. Alford*, 298 N.C. 465, 469, 259 S.E. 2d 242, 245 (1979).

The recent U.S. Supreme Court decision in *Ake v. Oklahoma*, 53 U.S.L.W. 4179 (U.S. Feb. 26, 1985), cited by defendant, does not compel a different result here. In that case, the Court enumerated three factors which govern whether "the basic tools of an adequate defense or appeal," which the State must provide for an indigent criminal defendant have in fact been provided. *Id.* at 4182. These are (i) the private interest affected; (ii) the governmental interest affected if the additional safeguard is to be required; and (iii) the probable value of the additional safeguard and the risk of erroneous deprivation of the affected private interest if the safeguard is not provided. *Id.* The Court held that where the defendant has made a pretrial showing that sanity is likely to be a factor in his defense, the State must provide the indigent defendant with funds to hire a psychiatrist to examine defendant and testify for him. However, the Court noted the "elusive and deceptive" nature of psychiatry and the unique role a psychiatrist would play in the effective presentation of an insanity defense. *Id.* These considerations simply do not apply here.

The *Ake* decision emphasized that "meaningful access to justice" is the goal in determining what tools must be provided to an indigent defendant by the State. *Id.* at 4181. Defendant here has no colorable claim that he was denied "meaningful access to justice." He was given competent legal counsel who had a duty to investigate and he failed to put forward the requisite showing of

necessity for a private investigator. The trial court did not err in refusing to appoint an investigator to assist defendant.

[3] Defendant's final assignment of error is that the trial court erred in denying his repeated requests for the court to set bond. Defendant alleges he was prejudiced in that he was unable to effectively assist counsel in preparing his defense while incarcerated. Defendant's arguments are without merit. The evidence available to the trial court prior to trial tended to show first degree murder. In such a case, the trial judge is not required to grant defendant bond although he may do so in his discretion. *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981).

While the weight of the evidence presented at the bond hearings may have shown defendant to be a good candidate for pretrial release despite the severity of the charge against him, there was no abuse of discretion by the trial court in denying bond. Further, defendant has shown no prejudice resulting from his pretrial incarceration. No allegation is made as to how the defendant could have assisted in his own defense any more than he did. The trial court did not err in treating defendant's case as a capital case for the purpose of setting bond, *see State v. Sparks*, 297 N.C. 314, 255 S.E. 2d 373 (1979), and in exercising its discretion to deny bond.

Defendant's remaining assignments of error stated in the record on appeal were not argued or supported by authority in his brief and are, therefore, deemed abandoned. Rule 28(b)(5), N.C. Rules App. Proc.

Having carefully considered all of defendant's arguments, we conclude that defendant received a fair trial free of prejudicial error.

No error.

Chief Judge HEDRICK and Judge BECTON concur.