STATE OF NORTH CAROLINA v. ANGELA PINION TIDWELL

No. 9319SC221

(Filed 7 December 1993)

**1. Homicide § 523 (NCI4th)— second-degree murder—threats—reconciliation—malice**

The trial court erred in a second-degree murder prosecution by not giving defendant's requested instruction that the jury could find from the evidence that defendant had reconciled with the victim and that, if they did so, any malice shown by defendant's previous threats could no longer be attributed to the killing.

**Am Jur 2d, Homicide § 500.**

**2. Homicide § 365 (NCI4th)— murder—struggle to prevent suicide—gun discharged—instruction on involuntary manslaughter refused—error**

The trial court erred in a second-degree murder prosecution by refusing defendant's request to instruct the jury on involuntary manslaughter where defendant testified that the victim was killed when she reached for the pistol in an attempt to prevent the victim from committing suicide. The North Carolina Supreme Court has consistently held that the trial court should charge on involuntary manslaughter where there

is evidence that the victim was unintentionally killed with a deadly weapon during a physical struggle with defendant.

**Am Jur 2d, Homicide §§ 425 et seq.**

Appeal by defendant from judgment entered 17 July 1992 by Judge F. Fetzer Mills in Rowan County Superior Court. Heard in the Court of Appeals 19 October 1993.

Defendant was tried upon a proper bill of indictment charging her with the murder of her husband, Mark A. Tidwell. The State's evidence tended to show that defendant and the victim were married in 1981 and that by 1989, two daughters were born of the marriage. The victim was a skilled construction worker and defendant was a homemaker.

In 1989, defendant met a man named Michael Ragan. During the subsequent three years, the marriage of defendant and the victim deteriorated and defendant left the marital home on several occasions to live with Ragan. After living with Ragan for some time, defendant would return to live with the victim. At the time of the murder, defendant and the victim were living together in the marital home with their two children.

The State presented substantial evidence that during times of marital discord between defendant and the victim, defendant threatened the life of the victim. At times defendant stated that she wished the victim was dead or that she wanted him to die. On other occasions she asked friends and acquaintances if they knew of anyone who would kill her husband for her. She also stated that she would pay someone $10,000 to kill her husband, and that if no one would kill her husband for her, she would do so herself by shooting the victim in the head and making it appear as if the shooting was accidental. Defendant indicated on numerous occasions that she wanted her husband to die or be killed so that she would receive the proceeds from his life insurance policies.

On 1 September 1991, the victim was killed by a single gunshot wound to the head. The fatal shot was fired from a two-shot .45 caliber Derringer pistol owned by the victim. The State's evidence tended to show that defendant shot the victim while he was asleep, or in an alcohol and drug induced stupor and that she thereafter placed the pistol in the victim's hand in an effort to create the appearance that he had committed suicide.

STATE v. TIDWELL

[112 N.C. App. 770 (1993)]

Defendant testified that on the night of the shooting the victim was emotionally upset because he did not believe that defendant loved him, and that he threatened to kill himself. After returning home with defendant from a bar, the victim took the gun from the drawer where it was stored and held it to his head. Defendant testified that she attempted to take the gun away from the victim as he held the gun to his head, but that when she did so the gun discharged, shooting the victim in the head.

The jury found defendant guilty of second degree murder and the trial court sentenced her to life imprisonment. Defendant appealed.

*Attorney General Michael F. Easley, by Assistant Attorney General Valerie B. Spalding, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

MARTIN, Judge.

Defendant contends that she is entitled to a new trial due to (1) repeated instances of alleged prosecutorial misconduct, (2) denial of her right to effective assistance of counsel, (3) the trial court's refusal to give a requested jury instruction, and (4) the court's failure to submit the lesser offense of involuntary manslaughter as a possible verdict. Defendant's latter two contentions have merit and we conclude that she is entitled to a new trial. We do not address her other contentions because they concern matters which may not arise at a new trial.

[1] Defendant requested the following instruction:

Prior Threats and Reconciliation—Evidence has been received with regard to prior threats by defendant against the life of the deceased. If you believe all or any part of this evidence, this would tend to show express malice on the part of the defendant; but if you so find, then you should consider evidence offered by the defendant tending to show a reconciliation on the part of the defendant, and that the defendant was living with the deceased as man and wife; and if you should so find from the evidence that they were reconciled, then the killing would no longer be attributed to the previous malice, but to some other reason, as raised by the evidence of the State or defendant.

It is well established that when a defendant requests a special instruction which is correct in law and supported by the evidence, the trial court must give the requested instruction, at least in substance. *State v. Lamb*, 321 N.C. 633, 365 S.E.2d 600 (1988); *State v. Hooker*, 243 N.C. 429, 90 S.E.2d 690 (1956). Refusal to give a requested instruction which is a correct statement of the law and which is supported by the evidence constitutes reversible error. *State v. Spicer*, 285 N.C. 274, 204 S.E.2d 641 (1974).

The instruction requested by defendant is a correct statement of the law. *State v. Horn*, 116 N.C. 1037, 21 S.E. 694 (1895). In *Horn*, the defendant was charged with murder. The State's evidence tended to show that during the days prior to the killing, the defendant and the victim had been on unfriendly terms and that the defendant had repeatedly threatened to kill the victim. However, the defendant presented evidence which tended to show that on the day of the killing the defendant and the victim had been friendly toward one another and that the defendant had intentionally avoided any confrontation with the victim. Based on the foregoing evidence, the defendant requested the court to instruct the jury that the malice which could be inferred from previous threats might be rebutted by evidence of a subsequent reconciliation. The trial court refused to give the requested instruction. On appeal, the Supreme Court ordered a new trial, holding that the trial court should have charged the jury that:

> [I]f the defendant did make the threats . . . this would tend to show express malice on the part of the defendant. But if they should so find, then they should consider the evidence offered by the defendant tending to show a reconciliation on the part of the defendant, and that defendant after the threats was friendly with the deceased. And that if they should find from the evidence that he was, then the law no longer attributed the killing to previous malice, but inferred it was from the new and sudden provocation.

*Horn*, 116 N.C. at 1045-46, 21 S.E. at 695; *See also, State v. Barnwell*, 80 N.C. 466 (1879). The State does not contend that the decision in *Horn* has been overruled and we are aware of no case affecting the rule set forth therein. Thus, we are bound to hold that defendant's requested instruction is a correct statement of the law. If the instruction was supported by the evidence, it was error to refuse to give it.

Our review of the record discloses that the requested instruction was supported by the evidence. Although defendant admitted having an extramarital affair with Michael Ragan, she testified that at the time of her husband's death, she was no longer involved with Ragan. She had been living with her husband for seven or eight weeks at the time of his death and they had resumed intimate marital relations. She testified that she loved the victim and that she was attempting to mend the damage done to their marriage by her past infidelities. If believed by a jury, this evidence could support a finding that although defendant had previously threatened the victim, at the time of the killing she had reconciled with him.

Based on the precedent of *Horn*, we hold that the trial court erred by refusing to instruct the jury that they could find from the evidence that defendant had reconciled with the victim, and that if they did so find, any malice shown by defendant's previous threats could no longer be attributed to the killing. *Horn*, 116 N.C. at 1045-46, 21 S.E. at 695. The trial court's refusal to give defendant's requested instruction entitles her to a new trial. *State v. Bailey*, 254 N.C. 380, 119 S.E.2d 165 (1961).

[2] Defendant also assigns as error the trial court's refusal to submit to the jury the issue of defendant's guilt of the lesser included offense of involuntary manslaughter. "Involuntary manslaughter has been defined as the unlawful and unintentional killing of another human being, without malice, which proximately results from an unlawful act not amounting to a felony . . . or from an act or omission constituting culpable negligence." *State v. Wallace*, 309 N.C. 141, 145, 305 S.E.2d 548, 551 (1983). Defendant contends that submission of involuntary manslaughter as a possible verdict was supported by the evidence.

Clearly there was no evidence that defendant killed the victim while engaged in an unlawful act not amounting to a felony. Therefore, to support a charge on involuntary manslaughter there must have been evidence from which the jury could find that defendant killed the victim while engaged in an act or omission constituting culpable negligence. "Culpable negligence" is defined as an act or omission evidencing a disregard for human rights and safety. *State v. Wilkerson*, 295 N.C. 559, 579-80, 247 S.E.2d 905, 916-17 (1978). The only evidence from which such negligence could be found was defendant's testimony that the victim was killed

when she reached for the pistol in an attempt to prevent the victim from committing suicide. We must decide whether such an act can constitute culpable negligence.

This Court has addressed the identical issue in two previous cases. In *State v. Crisp*, 64 N.C. App. 493, 307 S.E.2d 776 (1983), there was evidence that the victim was killed when the defendant reached for, or grabbed at a rifle which the victim was pointing at himself. This Court, relying on *State v. Lindsay*, 45 N.C. App. 514, 263 S.E.2d 364 (1980), held that the foregoing evidence failed to establish that the defendant's actions were wanton, reckless, or culpable and that the trial court erred by submitting involuntary manslaughter as a possible verdict. *Crisp*, 64 N.C. App. at 497, 307 S.E.2d at 779.

In *State v. Stanley*, 56 N.C. App. 109, 286 S.E.2d 865 (1982), the defendant testified that the victim, her boyfriend, threatened to shoot himself in the head because he believed that the defendant no longer loved him. As the victim held a pistol to his head, the defendant attempted to seize control of the gun. During the resulting struggle, the gun discharged and killed the victim. This Court held that this evidence was sufficient to show a wanton and reckless use of a firearm by the defendant and that the defendant was therefore not entitled to relief from her conviction for involuntary manslaughter.

The State contends that *State v. Ataei-Kachuei*, 68 N.C. App. 209, 314 S.E.2d 751, *disc. review denied*, 311 N.C. 763, 321 S.E.2d 146 (1984) constitutes additional authority for not submitting involuntary manslaughter under the facts of this case. We have reviewed the decision in *Ataei-Kachuei* and found it to be inapplicable to the present case on the ground that all of the evidence in that case showed that the defendant intentionally shot the victim.

Clearly there exists a conflict in our decisions regarding the propriety of submitting to the jury the issue of a defendant's guilt of involuntary manslaughter where there is evidence that the killing was unintentional and occurred when the defendant attempted to prevent the victim from committing suicide. We believe, however, that the issue has been resolved by our Supreme Court which has consistently held that where there is evidence that the victim was unintentionally killed with a deadly weapon during a physical struggle with the defendant, the trial court should charge the jury on the offense of involuntary manslaughter.

In *State v. Lytton*, 319 N.C. 422, 355 S.E.2d 485 (1987), the defendant's evidence tended to show that he and the victim engaged in an oral dispute. The defendant then fired his pistol at the ground as a warning to the victim to keep his distance. The victim did not heed the warning and continued to approach the defendant. A struggle ensued during which the victim was shot twice. The defendant did not aim the gun, pull the trigger or intend to shoot the victim. The Court held that this evidence required the trial court to give the defendant's requested instruction on involuntary manslaughter.

In *State v. Buck*, 310 N.C. 602, 313 S.E.2d 550 (1984), the defendant's evidence tended to show that the victim initially approached the defendant wielding a pocketknife. The defendant was frightened and obtained a knife from a nearby countertop. A struggle between the two armed men ensued during which the defendant unintentionally stabbed and killed the victim. The Court held that this evidence was sufficient to warrant submission of a possible verdict of involuntary manslaughter.

In *State v. Wallace*, 309 N.C. 141, 305 S.E.2d 548 (1983), the defendant's evidence tended to show that he and the victim were arguing when the victim reached for a gun laying on the bedroom dresser. Defendant grabbed the gun from under the victim's hand and was attempting to throw the gun across the room when it discharged and killed the victim. The Court held that the jury could have found that the defendant acted with culpable negligence from the manner in which he handled the cocked and loaded pistol, "*even under the circumstances as he described them.*" (Emphasis added.) *Id.* at 146, 305 S.E.2d at 551. The Court noted that:

> [W]ith few exceptions, it may be said that every unintentional killing of a human being proximately caused by a wanton or reckless use of firearms, in the absence of intent to discharge the weapon or . . . under circumstances not evidencing a heart devoid of a sense of social duty, is involuntary manslaughter.

*Id.* at 146, 305 S.E.2d at 551-52 (*quoting, State v. Foust*, 258 N.C. 453, 459, 128 S.E.2d 889, 893 (1963)).

Based on the foregoing decisions of our Supreme Court, we are bound to hold, even under the circumstances as described by defendant, that the trial court erred by refusing defendant's request to instruct the jury on the offense of involuntary manslaughter.

New Trial.

Judges GREENE and JOHN concur.