STATE OF NORTH CAROLINA v. DAVID JEROME McCOLLUM

No. COA02-797

(Filed 6 May 2003)

**1. Homicide— second-degree murder—failure to submit lesser-included offense of involuntary manslaughter**

The trial court did not commit plain error in a first-degree murder case in which defendant was convicted of second-degree murder by failing to submit the lesser-included offense of involuntary manslaughter ex mero motu, because: (1) the failure to instruct did not have a probable impact on the jury's finding that defendant was guilty of second-degree murder; and (2) any error is harmless in light of the jury's rejection of voluntary manslaughter and conviction of defendant for second-degree murder since a finding of malice precludes a finding of either voluntary manslaughter or involuntary manslaughter.

**2. Criminal Law— motion for mistrial—curative instruction**

The trial court did not abuse its discretion in a first-degree murder case by denying defendant's motion for a mistrial when the jury heard testimony that in a later unrelated case a gun was seized which may have been used at the incident for which defendant was on trial, because: (1) contrary to defendant's arguments, no evidence was presented that defendant had committed another murder in addition to the charge at issue; and (2) the trial court sustained defendant's objections, struck the testimony, gave a curative instruction, and there has been no showing that the jury failed to follow the instructions of the trial court to disregard the testimony.

**3. Criminal Law— prosecutor's argument—improper statements**

Although defendant contends the trial court abused its discretion in a first-degree murder case by failing to intervene ex mero motu when the State allegedly misstated evidence during closing arguments that defendant walked angrily and stated he had something to take care of, this assignment of error is overruled because: (1) although defendant objected to other statements by the State during closing arguments, defendant failed to object to the language now assigned as error; and (2) the alleged improper statements were not so gross or excessive to compel a holding that the trial court abused its discretion in not correcting them or that defendant is entitled to a new trial.

Judge WYNN dissenting.

Appeal by defendant from judgment entered 26 July 2001 by Judge Jack A. Thompson in Robeson County Superior Court. Heard in the Court of Appeals 25 March 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Celia Grasty Lata, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Anne M. Gomez, for defendant.*

TYSON, Judge.

David Jerome McCollum ("defendant") appeals from his conviction and sentence for second-degree murder. We find no error.

## I. Background

On 27 December 1999, defendant visited the residence of his girlfriend, Kenyatta McNeill ("Kenyatta"). Vander Leach ("Leach") and Bryan Howell were also visiting at the residence and playing video games with Jarode, Kenyatta's and Leach's two-year-old son. Kenyatta's cousin, Phillip McNeill ("Phillip"), and Leach's friend, Tommy Davis, arrived at Kenyatta's house late that afternoon. At approximately 8:00 p.m., Kenyatta went upstairs and fell asleep in her room, leaving the others downstairs. Evidence was presented that Leach and the other men consumed alcohol and marijuana that night.

Defendant arrived at Kenyatta's house later in the evening, went upstairs to Kenyatta's room, and awakened her. Kenyatta would not

accompany defendant to his house. She testified that defendant "got mad. We argued. He thought maybe it was something going on because of who was there." After conversing with defendant for a couple of minutes, Kenyatta laid back down. She testified that she "told him not to go down there and start no trouble" and that she "heard [defendant] cock the gun when he went downstairs." Kenyatta overheard a conversation downstairs followed by a gun shot. She attempted to go downstairs, but Phillip initially stopped her. When Kenyatta arrived downstairs, she observed that Leach had been shot and was lying on the floor. Leach told her, "Jerome McCollum shot me."

Phillip testified that he was going up the stairs when he encountered defendant heading downstairs. Phillip heard defendant ask "Is you playing me?" Leach responded "I can't come see my kid?" Phillip heard a gunshot followed by a second gunshot a few seconds later. Phillip returned downstairs, saw defendant leave, and observed Leach lying on the floor suffering from a gunshot wound.

Lumberton Police Lieutenant Jerome Morton arrived at the scene and spoke with Leach, while they waited for the ambulance to arrive. Leach told Lieutenant Morton that "David McCollum" had shot him. Leach was taken to the hospital and was pronounced dead approximately an hour later.

Lumberton Police Detective Peter Locklear retrieved defendant from the Robeson County Sheriff's Department after defendant surrendered himself. Defendant waived his *Miranda* rights and gave Detective Locklear a sworn statement:

On December the 27th, 1999, around 10:00 p.m. I, David McCollum, went to 400 Holly Street in Lumberton. After I got to the apartment at 400, I knocked on the door and a black male let me in. I went to the apartment to see Kenyatta. Once I was in . . . the apartment, I asked to see Kenyatta and Phillip told me that she was upstairs.

I went upstairs to see—I went upstairs to where Kenyatta was at and asked her if she was going to stay with me that night; and she said yes.

I told Kenyatta that I would be back later to get her. I left and went back downstairs, and went in the kitchen and got some water to drink, and I played with Kenyatta's baby.

I started back through the living room to leave when Vander Leach said something smart to me. I asked him what he had said. And when—and we then started fighting. Vander was trying to get up out of a chair and I pushed him back down. I pulled my gun out of my coat pocket and I tried to hit him [Vander] with it, but I missed him and hit the chair. Vander and me were fighting, and we were in the living room and the gun went off. We rumbled to the kitchen and Vander fell to the floor.

After Vander fell, I left the apartment and went to my residence. I turned myself in on 1/3/2000.

Gene Mitchell testified as a witness for defendant. Mitchell stated that, in November 1999, he was walking with Leach's brother when a "guy started shooting at us." The next morning Leach and defendant went to Mitchell's house. Leach took a swing at Mitchell and the two wrestled. Mitchell admitted that the day before Leach was killed, Leach apologized for the fight.

On rebuttal, Kenyatta testified that in November 1999 she had gone shopping with defendant to purchase a winter coat for her son. Upon returning to her house, they noticed Leach in the yard next door with two of his friends. Defendant "went straight over to the yard, pulled a gun out, started shooting." Defendant did not testify at trial.

The trial court submitted first-degree murder, second-degree murder, voluntary manslaughter and not guilty to the jury, who returned a verdict of second degree murder. Defendant was sentenced to a presumptive sentence of 220 months minimum and 273 months maximum.

## II. Issues

Defendant contends the trial court erred by (1) failing to charge the jury and to submit the lesser-included offense of involuntary manslaughter, (2) denying his motion for mistrial, and (3) failing to intervene when the State misstated evidence during closing arguments.

## III. Instruction on Involuntary Manslaughter

[1] Defendant asserts that the trial court committed reversible error in failing to instruct the jury on the lesser included offense of involuntary manslaughter and to submit that possible verdict to the jury *ex mero moto*. We disagree.

### A. Plain Error

During the jury charge conference, defendant did not request an instruction on involuntary manslaughter and failed to object to the jury instructions as given. Defendant asked for an instruction on accident which was denied and he does not appeal the denial of that instruction. If a party fails to object to the jury instructions, our review is limited to plain error.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "[]resulted in a miscarriage of justice or in the denial to appellant of a fair trial[]" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill,* 676 F. 2d 995, 1002 (4th Cir. 1982)).

> Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. Murder in the second degree is the unlawful killing of a human being *with malice* but without premeditation and deliberation. Voluntary manslaughter is the unlawful killing of a human being *without malice* and without premeditation and deliberation. Involuntary manslaughter is the unlawful killing of a human being *without malice,* without premeditation and deliberation, and without intention to kill or inflict serious bodily injury.

*State v. Wilkerson,* 295 N.C. 559, 577-78, 247 S.E.2d 905, 915 (1978) (quoting *State v. Wrenn,* 279 N.C. 676, 681-82, 185 S.E.2d 129, 132 (1971)) (citations omitted) (emphasis supplied). The difference between second-degree murder and manslaughter is the presence of malice in the former and its absence in the later. *Id.* Malice can by implied from the circumstances "when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life." *State v. Trott,* 190 N.C. 674, 679, 130 S.E. 627, 629 (1925). In such a case, the homicide "cannot be

involuntary manslaughter," even if the assailant did not intend to kill the victim. *Id.*

*State v. Wallace*, 309 N.C. 141, 305 S.E.2d 548 (1983), held that the trial court's failure to submit involuntary manslaughter was prejudicial error warranting a new trial. *Wallace* is distinguishable from the present case. The Court in *Wallace* did not conduct its review under plain error because Wallace requested but was denied an instruction on involuntary manslaughter. 309 N.C. at 145, 305 S.E.2d at 551. The *Wallace* Court also found error in submitting voluntary manslaughter and self-defense to the jury. *Id.* Here, we review under plain error because defendant failed to request an instruction on involuntary manslaughter. Further, there was no error in submitting voluntary manslaughter or self-defense in the present case as compared with *Wallace*.

Defendant came to the home of his girlfriend, who resided with her two-year-old child, with a loaded weapon. Defendant's statement admits that he pulled his loaded weapon on Leach while Leach was seated. Defendant and Leach struggled in the presence of multiple people with defendant holding his loaded gun and attempting to use it as a weapon to strike Leach. In light of overwhelming evidence of defendant's guilt, the trial court's failure to instruct on the lesser included offense of involuntary manslaughter did not have " 'a probable impact on the jury's finding that the defendant was guilty.' " *Odom*, 307 N.C. at 660, 300 S.E.2d at 378. The trial court did not commit plain error in failing to instruct on involuntary manslaughter.

## B. Finding of Malice

An independent basis for overruling this assignment of error is that any error in failing to instruct on involuntary manslaughter is harmless in light of the jury's rejection of voluntary manslaughter and conviction of defendant for second-degree murder.

In *State v. Hardison*, 326 N.C. 646, 392 S.E.2d 364 (1990), our Supreme Court held that when the trial court submitted first-degree murder and second-degree murder to the jury who returned a verdict of first-degree murder, any error in denying a request to charge on involuntary manslaughter was harmless. 326 N.C. at 655, 392 S.E.2d at 369. The Supreme Court reasoned:

To reach its verdict of first-degree murder on the theory of premeditation and deliberation, the jury was required to find a specific intent to kill, formed with premeditation and deliberation,

which would preclude a finding that the killing occurred as a result of criminal negligence, just as it would preclude a finding that it occurred by accident.

*Id.* Although *Hardison* involved a conviction for first-degree murder and the jury's rejection of second-degree murder, our Supreme Court's rationale applies here.

The trial court submitted possible verdicts of first-degree murder, second-degree murder, voluntary manslaughter, or not guilty. When the jury convicted defendant of second-degree murder and rejected voluntary manslaughter, it necessarily found that defendant acted with malice. A finding of malice precludes a finding of either voluntary manslaughter or involuntary manslaughter. *Wilkerson,* 295 N.C. at 578, 247 S.E.2d at 915. Any asserted error in failing to instruct on involuntary manslaughter was harmless and does not rise to the level of plain error. This assignment of error is overruled.

## IV. Mistrial

[2] Defendant contends the trial court erred by denying defendant's motion for a mistrial after the State placed inadmissible and highly prejudicial information before the jury.

Lumberton Police Officer James Jordan testified that "in a separate case, there was mention of a gun that was used in a murder earlier in the year." Officer Jordan seized a semiautomatic nine millimeter pistol during the investigation of another case and turned it over to the investigating officer in the present case. The trial court heard arguments of counsel outside the presence of the jury and ruled that the gun was not relevant and inadmissible.

On motion of defendant, the trial court instructed the jury:

Ladies and gentlemen, I have allowed a motion to strike all of the testimony of this witness. In the trial of this case, you will disregard any testimony this witness has made at this point and not consider it in your deliberations.

The trial court also redacted the lab reports to omit any reference to the gun or tests performed on the gun. Defendant moved for a mistrial and stated "the jury has heard some of this information. They have questions in their minds. They—they've basically been tainted. That he cannot receive a fair trial now that they've heard this information, you can't unring this bell." The trial court replied, "Okay.

I've given the instruction that you requested; so, I'm denying your motion for mistrial."

"The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2001). "Whether a motion for mistrial should be granted . . . rests in the sound discretion of the trial judge, and a mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." *State v. Calloway*, 305 N.C. 747, 754, 291 S.E.2d 622, 627 (1982) (citing *State v. Dollar*, 292 N.C. 344, 233 S.E.2d 521 (1977); *State v. Chapman*, 294 N.C. 407, 241 S.E.2d 667 (1978)).

On appeal, the decision of the trial judge in this regard is entitled to the greatest respect. He is present while the events unfold and is in a position to know far better than the printed record can ever reflect, just how far the jury may have been influenced by the events occurring during the trial and whether it has been possible to erase the prejudicial effect . . . . Therefore, unless his ruling is so clearly erroneous so as to amount to a manifest abuse of discretion, it will not be disturbed on appeal.

*State v. Newton*, 82 N.C. App. 555, 559, 347 S.E.2d 81, 84 (1986) *disc. rev. denied*, 318 N.C. 699, 351 S.E.2d 756 (1987) (quoting *State v. Sorrells*, 33 N.C. App. 374, 377, 235 S.E.2d 70, 72, *cert. denied*, 293 N.C. 257, 237 S.E.2d 539 (1977)).

Contrary to defendant's arguments, no evidence was presented that defendant had committed another murder in addition to the charge at trial. Instead, the testimony was that in a later, unrelated case, a gun was seized which may have been used at the incident for which defendant was on trial. There was no testimony about a second murder.

The trial court sustained defendant's objections, struck the testimony, and gave a curative instruction. "[J]urors are presumed to heed a trial judge's instructions." *State v. Rogers*, 355 N.C. 420, 453, 562 S.E.2d 859, 880 (2002) (citing *State v. Nicholson*, 355 N.C. 1, 60, 558 S.E.2d 109, 148 (2002)). Defendant made no showing that the jury failed to follow the instructions of the trial court and did not disregard the testimony of Officer Jordan as ordered. This assignment of error is overruled.

## V.  State's Closing Arguments

**[3]** Defendant argues that the trial court erred by failing to intervene *ex mero motu* when the State made a prejudicial misstatement of the evidence in its closing argument. We disagree.

Control of the arguments of counsel rests in the discretion of the trial court. This Court "ordinarily will not review the exercise of the trial judge's discretion in this regard unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations." *State v. Johnson*, 298 N.C. 355, 368-69, 259 S.E.2d 752, 761 (1979) (citing *State v. Taylor*, 289 N.C. 223, 221 S.E.2d 359 (1976)).

During closing arguments, the prosecution stated:

[Defendant] went upstairs; Kenyatta turned him down. Consistent with the way she testified, as to the fact that their relationship really had—that the closest part of it had ended. And for reasons, in addition, that she was tired from her recent trip. She didn't intend to go with him. Well, he had something he was going to do about that. And walked angrily downstairs. *I say angrily because he made some comment to her about what he had to do, something he had to take care of.* And Phillip recalls him coming down the stairs with some urgency, some speed, as he said. In fact, ignoring Phillip completely.

(Emphasis added). Although defendant objected to other statements by the State during closing arguments, defendant failed to object to the language italicized above assigned as error. Presuming the statements were improper, we hold that they were "not so gross or excessive to compel us to hold that the trial judge abused his discretion in not correcting them or that defendant is entitled to a new trial." *Id.* This assignment of error is overruled.

## VI.  Conclusion

The jury convicted defendant of second-degree murder after instructions on voluntary manslaughter were submitted. Any asserted error by the trial court in failing to submit involuntary manslaughter does not rise to the level of plain error and is harmless error. The trial court did not abuse its discretion in denying defendant's motion for mistrial and in failing to intervene *ex mero motu* during the State's closing argument.

No error.

Judge STEELMAN concurs.

Judge WYNN concurs in part, dissents in part.

WYNN, Judge dissenting.

Because I believe the majority's holding under Section III abolishes the review of an erroneous failure to instruct on a lesser-included offense in every instance in which the jury has found a defendant guilty of a greater offense, I dissent.

The majority relies upon *State v. Hardison*, 326 N.C. 646, 392 S.E.2d 364 (1990), in part, in holding that any error in failing to instruct on the lesser-included offense of involuntary manslaughter "was harmless in view of the jury's verdict finding malice to support second-degree murder." However, the majority's reliance upon *State v. Hardison* cannot be reconciled with our Supreme Court's decision in *State v. Wallace*, 309 N.C. 141, 305 S.E.2d 548 (1983). As in the subject case, the trial court in *Wallace* submitted three possible verdicts—first-degree murder, second-degree murder and voluntary manslaughter. In holding that the failure to also submit involuntary manslaughter to the jury constituted prejudicial error warranting a new trial, our Supreme Court stated:

> [An] error in failing to instruct on involuntary manslaughter . . . is not cured by a verdict of guilty of the offense charged because, in such case, it cannot be known whether the jury would have convicted of a lesser degree if the different permissible degrees arising on the evidence had been correctly presented in the court's charge.

> This is also true when the jury returns a verdict convicting the defendant of the highest offense charged, even though the conviction could have been of an intermediate offense.

309 N.C. at 146-47; 305 S.E.2d at 552; *see also State v. Buck*, 310 N.C. 602, 313 S.E.2d 550 (1984) (where the failure to instruct on involuntary manslaughter warranted a new trial even though second degree murder, voluntary manslaughter and not guilty of reason of both self-defense and accident charges were given).

Thus, even under a plain error analysis, *Wallace* controls by holding that a conviction of a greater offense does not cure the failure to

instruct on a lesser-included offense, if warranted by the evidence, unless the conviction was for first-degree murder based upon premeditation and deliberation. *See* 309 N.C. at 146-47; 305 S.E.2d at 552. Indeed, it is "reversible error for the trial court not to submit to the jury such lesser included offenses to the crime charged as are supported by the evidence." *State v. Lytton*, 319 N.C. 422, 426-27, 355 S.E.2d 485, 487 (1987).

Moreover, the majority states that the evidence in this case showed that, "Defendant and Leach struggled in the presence of multiple people with defendant holding his loaded gun and attempting to use it as a weapon to strike Leach." Based upon this characterization of the evidence, an involuntary manslaughter instruction is warranted. *See State v. Tidwell*, 112 N.C. App. 770, 775-76, 436 S.E.2d 922, 926 (1993) (citing several Supreme Court cases in which the Court has consistently held that where there is evidence that the victim was unintentionally killed with a deadly weapon during a physical struggle with the defendant, the trial court should charge the jury on the offense of involuntary manslaughter).

The majority also states "[m]alice can be implied from the circumstances 'when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life.' " Although this statement is true, as our Supreme Court explained in *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978), "both [involuntary manslaughter and second-degree murder] can involve an act of 'culpable negligence' that proximately causes death. Culpable negligence, standing alone, will support at most involuntary manslaughter. When, however, . . ., an act of culpable negligence also imports danger to another [and] is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life it will support a conviction for second degree murder." In this case, the jury was not given the option of deciding whether defendant's conduct, although reckless and wanton, constituted involuntary manslaughter.

Likewise, the trial court's instruction on voluntary manslaughter, does not cure the failure to instruct on involuntary manslaughter because the elements and circumstances constituting voluntary manslaughter differ from those constituting involuntary manslaughter. *Compare State v. Rinck*, 303 N.C. 551, 280 S.E.2d 912 (1981) (defining voluntary manslaughter as "the unlawful killing of a human being without malice, express or implied, and without premeditation and deliberation.") *and State v. Barts*, 316 N.C. 666, 343 S.E.2d 828

(1986) (explaining that voluntary manslaughter occurs when one kills intentionally but does so in heat of passion suddenly aroused by adequate provocation or in exercise of self-defense where excessive force is utilized or defendant is the aggressor") *with State v. Wallace*, 309 N.C. 141, 145, 305 S.E.2d 548, 551 (1983) (defining involuntary manslaughter as the unlawful and unintentional killing of another human being, without malice, which proximately results from . . . an act or omission constituting culpable negligence") *and State v. Wrenn*, 279 N.C. 676, 683, 185 S.E.2d 129, 133 (1971) (indicating the wanton or reckless use of firearms in the absence of intent to discharge the weapon proximately causing the death of a human being may constitute involuntary manslaughter).

I also reject the notion that the jury's conviction of defendant of second-degree murder cures the trial court's failure to instruct on involuntary manslaughter.

The majority cites *State v. Wilkerson*, 295 N.C. at 578, 247 S.E.2d at 915, as standing for the proposition that "a finding of malice precludes a finding of either voluntary manslaughter or involuntary manslaughter." However, that part of the *Wilkerson* decision simply defined malice and explained that unlike second-degree murder, malice is not an element of manslaughter. Unlike first-degree murder based upon premeditation and deliberation where the jury must find the defendant acted with a specific intent to kill, second-degree murder and voluntary manslaughter are general intent crimes where the jury must only find the defendant intended to do the act which resulted in the death of another. *See State v. Coble*, 351 N.C. 448, 449-50, 527 S.E.2d 45, 46-47 (2000). In these types of homicide cases, the jury is not specifically finding the presence or absence of malice. Indeed, the intentional use of a deadly weapon gives rise to a presumption of malice and it is only through mitigation that one is convicted of voluntary manslaughter. *See State v. Knight*, 87 N.C. App. 125, 129, 360 S.E.2d 125, 128 (1987) (discussing that absent heat of passion or evidence of self-defense, the intentional infliction of a wound raises a mandatory presumption of unlawfulness and malice). Involuntary manslaughter is also a general intent crime which involves a killing without malice. But unlike voluntary manslaughter and second-degree murder, the killing in involuntary manslaughter is unintentional.

As our Supreme Court stated in *Wallace*, "the erroneous failure to submit the question of defendant's guilt of lesser degrees of the same crime is not cured . . . when the jury returns a verdict convicting the

defendant of the highest offense charged, even though the conviction could have been of an intermediate offense." 309 N.C. at 146-47; 305 S.E.2d at 552. Indeed, "if the jury did not believe that the shooting was a nonnegligent accident, then under the evidence and instructions it was left with no alternative other than a verdict of murder in the second degree." *Id.*; *see also State v. Palmer*, 293 N.C. 633, 239 S.E.2d 406 (1977) (where in an assault with a deadly weapon case, the failure to submit guilty of simple assault to the jury was not cured by a jury finding that a stick was a deadly weapon since it could not be known whether the jury would have convicted defendant of the lesser offense if the jury had been permitted to do so).

Furthermore, the majority eviscerates the existing law in North Carolina that evidence must be viewed in the light most favorable to the defendant in determining whether an instruction on a lesser-included offense should have been given. *State v. Barlowe*, 337 N.C. 371, 378, 446 S.E.2d 352, 357 (1994). Under the new rule now made by the majority, a defendant would not be entitled to an involuntary manslaughter instruction once the evidence showed that malice could be implied from the circumstances of the killing. However, under *Barlowe*, in determining whether the trial court committed reversible error in failing to submit a lesser-included offense of involuntary manslaughter, this Court should focus on whether the jury could find that the killing was committed *without* malice, not whether the jury could find that the killing was committed *with* malice. In essence, the majority's rule would now preclude any lesser-included offense instructions if the evidence merely shows that there was sufficient evidence of the greater offense. I believe that is error. *See State v. Leazer*, 353 N.C. 234, 539 S.E.2d 922 (2000); *State v. Golden*, 143 N.C. App. 426, 546 S.E. 2d 163 (2001) (holding that the test for submission of lesser-included offenses is the presence or absence of any evidence in the record which might convince a rational finder of fact to convict defendant of less grievous offense); *see also State v. Smith*, 351 N.C. 251, 268, 524 S.E.2d 28, 40 (2000) (explaining that only "if the state's evidence is sufficient to fully satisfy its burden of proving each element of the greater offense *and* there is no evidence to negate those elements other than defendant's denial that he committed the offense, [then] the defendant is not entitled to an instruction on the lesser offense").

In sum, every greater offense by definition contains an element that is not included in a lesser-included offense. Under the majority's rationale today, a jury's finding of guilty of a greater offense would

render harmless the erroneous failure of a trial court to instruct on a lesser-included offense because the jury found that the evidence was sufficient to support the additional element not included in the lesser offense. That conclusion, in my opinion, is error; I dissent.