NO. COA13-1220

NORTH CAROLINA COURT OF APPEALS

Filed:  3 June 2014

STATE OF NORTH CAROLINA

    v.

ALBERT GREY GURKIN, SR.

Martin County
No. 09 CRS 0413

Appeal by defendant from judgment entered 7 February 2013 by Judge Wayland J. Sermons, Jr., in Martin County Superior Court.  Heard in the Court of Appeals 19 March 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Richard L. Harrison, for the State.*

> *Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

McCULLOUGH, Judge.

Defendant appeals from judgment entered 7 February 2013 after a Martin County jury found him guilty of second-degree murder.  For the following reasons, we find no prejudicial error.

## I. Background

Defendant, Albert Grey Gurkin, Sr., was indicted for first-degree murder on 17 August 2009.  Defendant was tried at the 28 January 2013 Criminal Session of Martin County Superior Court,

the Honorable Wayland J. Sermons, Jr., presiding.

Prior to the start of jury selection, the trial court inquired as to whether counsel had any objections and no objections were raised. Jury selection began with the trial court selecting six prospective jurors for *voir dire*. All six prospective jurors were passed to the defense. The trial court excused one venire member and the defense accepted the remaining five. The trial court then directed the clerk to call seven prospective jurors. This modified process continued without objection until a full jury was accepted.

During the *voir dire* of prospective juror Ms. McNeil, McNeil stated she overheard some discussion in the jury room about the case. Specifically, she overheard a few prospective jurors discussing whether they knew defendant or what the case was about. During the State's *voir dire* questioning, the following exchange took place:

> MR. EDWARDS: Have you -- since this happened, do you recall having a conversation with anyone about the case?
>
> JUROR NO. 7/MS. MCNEILL: Not really. Just, you know wondering what it was about when I was sitting in the jury room.

During defense counsel's *voir dire* questioning, the following exchange took place:

MR. DUPREE: You mentioned something that I'm going to ask you a couple of questions about. You said in the jury room where you've all got so much free time over the last few days there was some discussion about what was going on or what the case was about?

JUROR NO. 7/MS. MCNEILL: Yes, a little bit.

MR. DUPREE: What kind of discussion did you hear?

JUROR NO. 7/MS. MCNEILL: Did we -- did anybody know him, you know, Grey, know him personally and what happened, that sort of thing. I know you said not to do that, but they did.

THE COURT: I sure did.

MR. DUPREE: Would you say that was quite a few people asking each other about --

JUROR NO. 7/MS. MCNEILL: No, not a lot. Just a few.

MR. DUPREE: Just people in your circle?

JUROR NO. 7/MS. MCNEILL: Just a little bit around me.

MR. DUPREE: Well, obviously, you knew, and you're an accomplished person who has had a long career, what the Judge's specific instructions were. Do you feel like that that disobeyance, that discussion, had any impact on you?

JUROR NO. 7/MS. MCNEILL: No, because nobody knew much about it.

MR. DUPREE: . . . In its entire capacity, do you think any of those discussions would

have caused any impact on the ability to sit on this jury?

JUROR NO. 7/MS. MCNEILL:  No.

MR. DUPREE:  Now, other than asking about what was –- if anybody knew him or knew them or whatever, what else was discussed that you heard?

JUROR NO. 7/MS. MCNEILL:  That's about it. It was the same thing.  It was what I read in the paper or on the news.

MR. DUPREE:  They talked about that, the coverage that had been applied to the media?

JUROR NO. 7/MS. MCNEILL:  A little bit. But -- (shaking her head back and forth.)

Based on these exchanges, defense counsel made a motion for mistrial.  After the court asked defense counsel whether he intended to offer any evidence in support of his motion, he requested to examine the 57 remaining members of the jury pool that may have been in the room at the time of the alleged improper discussion.  That request, along with the motion for mistrial, was denied.  The trial court declined to excuse Ms. McNeill for cause and the defense used one of its peremptory challenges to excuse her.

The evidence at trial tended to show the following: defendant and Jewel Gurkin, the victim, had a contentious marriage.  They would often go days without speaking to one

another. A main point of contention was the contents of defendant's will. Defendant wanted to leave all of his money to Jewel and all of his land to his son, Grey Gurkin, Jr. Jewel was unhappy about defendant leaving the land to his son. Jewel told others about her troubles with defendant and that she feared "something was going to happen."

The night before Jewel's death, she and defendant engaged in a heated argument about defendant's will. The next morning, defendant went into the bathroom to shave and brush his teeth. While defendant was washing his eyes with a hot washcloth, Jewel touched defendant in his lower back with a stun gun. Defendant turned around and pushed Jewel up against the cabinets in an attempt to keep her from using the stun gun again. Defendant was able to use his left hand to push the stun gun into Jewel's side. Defendant had no memory of what he did with his right hand. Jewel "snatched back" and the stun gun burned defendant's fingers. According to defendant, the next thing he knew, they were on the floor.

Defendant noticed blood in the corner of Jewel's mouth and discovered she was not breathing. When defendant realized Jewel was dead, he wrapped her in a blanket, tied her hands and feet together, and carried her down to a pond on his property. He

moved some sticks and limbs around and laid her on the ground. Police were alerted when Jewel failed to show up for work. They were unable to find her. That night, defendant stayed with his son and told him what he had done. Sometime between midnight and 5:00 a.m., defendant moved and unwrapped the body so it could be found. After moving the body, defendant was immediately apprehended by the police, who had been searching for the body all day.

An autopsy revealed the cause of death to be strangulation. The state's expert testified that it can take approximately ten seconds of compression on the neck for a person to lose consciousness and approximately five minutes to cause death.

At the close of the evidence, the trial court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, and acquittal. Defense counsel requested instructions on self-defense and imperfect self-defense, which the trial court denied. The jury returned a verdict finding defendant guilty of second-degree murder and the trial court entered a judgment sentencing defendant to a term of 189 to 236 months in prison. Defendant gave notice of appeal in open court.

## II. Discussion

Defendant raises the following issues on appeal: (1) whether the trial court abused its discretion by declining to inquire into alleged improper discussions by prospective jurors; (2) whether the trial court plainly erred in deviating from the statutory procedure for passing jurors to defendant during jury selection; (3) whether the trial court plainly erred in omitting an instruction on involuntary manslaughter; and (4) whether the trial court properly denied defendant's requested instructions on self-defense and imperfect self-defense.

## A. Jury Misconduct

Defendant first asserts that the trial court abused its discretion by declining to make an inquiry into alleged improper discussions by prospective jurors. Specifically, defendant argues that when such jury misconduct is alleged, the trial court must conduct an investigation into the alleged misconduct and does not have the discretion to decline to do so.

In reviewing a trial court's decision to grant or deny a motion for mistrial on the basis of juror misconduct, we review for abuse of discretion. *State v. Bonney*, 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991). The trial court's decision should only be overturned where the error is so serious that it substantially and irreparably prejudiced the defendant, making a

fair and impartial verdict impossible. *Id.*

"The determination of the existence and effect of jury misconduct is primarily for the trial court whose decision will be given great weight on appeal." *Id.* at 83, 405 S.E.2d at 158. When jury misconduct is alleged, the trial court is vested with the "discretion to determine the procedure and scope of the inquiry." *State v. Burke*, 343 N.C. 129, 149, 469 S.E.2d 901, 910 (1996).

Defendant relies on *State v. Harris*, 145 N.C. App. 570, 551 S.E.2d 499 (2001), *disc. review denied*, 355 N.C. 218, 560 S.E.2d 146 (2002), for the contention that an absolute duty to investigate juror misconduct is imposed upon the trial court when such misconduct is alleged. Specifically, defendant cites to the following sentence: "Where juror misconduct is alleged . . . the trial court must investigate the matter and make appropriate inquiry." *Harris*, 145 N.C. App. at 576, 551 S.E.2d at 503. Defendant's reliance on this quote ignores the immediately following sentence from *Harris*: "However, there is no absolute rule that a court must hold a hearing to investigate juror misconduct upon an allegation." *Id.* at 576-77, 551 S.E.2d at 503. Indeed, this Court has held that only "[w]hen there is *substantial reason to fear* that the jury has become aware of

improper and prejudicial matters, the trial court must question the jury as to whether such exposure has occurred and, if so, whether the exposure was prejudicial." *State v. Black*, 328 N.C. 191, 196, 400 S.E.2d 398, 401 (1991) (emphasis added). Further, "[a]n examination of the juror involved in alleged misconduct is not always required, especially where the allegation is nebulous." *Harris*, 145 N.C. App. at 577, 551 S.E.2d at 503.

Our Supreme Court has held that "'[i]n the event of some contact with a juror it is the duty of the trial judge to determine whether such contact resulted in *substantial and irreparable prejudice* to the defendant. It is within the discretion of the trial judge as to what inquiry to make.'" *Burke*, 343 N.C. at 149, 469 S.E.2d at 911 (emphasis added) (quoting *State v Willis,* 332 N.C. 151, 173, 420 S.E.2d 158, 168 (1992)).

The trial court acted within its discretion in declining to conduct any further inquiry into the alleged improper discussions of prospective jurors and limiting the scope of its inquiry to the lines of questioning quoted above. When asked by the court, defense counsel could not say how defendant was prejudiced. Ms. McNeill stated that from what she overheard, no prospective juror indicated that he or she either knew defendant

or anything about the case. Based upon Ms. McNeill's responses and the trial court's observations, the trial court was satisfied that the alleged statements of prospective jurors did not give rise to a substantial reason to fear that the jury was prejudiced. It was well within the trial court's discretion when it limited its inquiry to a consideration of Ms. McNeill's *voir dire* and determined that there was no prejudice to defendant. Accordingly, we hold that the trial court did not err in refusing to conduct any further inquiry.

### B. Jury Selection Procedure

Defendant next asserts that the trial court erred in deviating from the statutory procedure for passing jurors to defendant during jury selection. Defendant argues that deviation from the requirements of N.C. Gen. Stat. § 15A-1214 entitles him to a new trial. We disagree.

Although defendant failed to object to the procedure utilized at trial, "when a trial court acts contrary to a statutory mandate . . . the right to appeal the court's action is preserved." *State v. Love*, 177 N.C. App. 614, 623, 630 S.E.2d 234, 240, *disc. review denied*, 360 N.C. 580, 636 S.E.2d 192 (2006) (internal quotation marks omitted). In reviewing a trial court's deviation from the statutory procedure for the

passing of jurors to the defendant where defendant failed to object to the procedure, we review for plain error. *State v. Stroud*, 147 N.C. App. 549, 564, 557 S.E.2d 544, 553 (2001). Our Supreme Court recently clarified how the plain error rule is to be applied in North Carolina:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334, (2012) (citations and internal quotation marks omitted). Further, the plain error rule is to be applied cautiously and only in exceptional cases, and the error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]" *Id*. (quotation marks and citations omitted).

The procedure for passing prospective jurors to a defendant during jury selection is governed by N.C. Gen. Stat. § 15A-1214, which provides in pertinent part:

> (d) The prosecutor must conduct his examination of the first 12 jurors seated and make his challenges for cause and exercise his peremptory challenges. If the judge allows a challenge for cause, or if a

> peremptory challenge is exercised, the clerk must immediately call a replacement into the box. When the prosecutor is satisfied with the 12 in the box, they must then be tendered to the defendant. . . .
>
> . . . .
>
> (f) Upon the calling of replacement jurors, the prosecutor must examine the replacement jurors and indicate satisfaction with a completed panel of 12 before the replacement jurors are tendered to a defendant. . . . This procedure is repeated until all parties have accepted 12 jurors.

N.C. Gen. Stat. § 15A-1214(d) and (f) (2013). It is undisputed that the trial court violated the statutorily mandated procedure for jury selection. Despite this violation, "a new trial does not automatically follow a finding of statutory error." *State v. Garcia*, 358 N.C. 382, 406, 597 S.E.2d 724, 742-43 (2004), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005). Our Supreme Court has "consistently required that defendants claiming error in jury selection procedures show prejudice in addition to a statutory violation before they can receive a new trial." *Id*. at 406, 597 S.E.2d at 743.

The procedure for jury selection is designed to "ensure the empanelment of an impartial and unbiased jury." *Love*, 177 N.C. App. at 623, 630 S.E.2d at 241 (internal quotation marks omitted). Defendant, both in his brief and reply brief, asserts

a claim of prejudice on the basis that the trial court deviated from the statutory procedure. However, defendant fails to show, nor does he argue, "jury bias, the inability to question prospective jurors, inability to assert peremptory challenges, nor any other defect which had the likelihood to affect the outcome of the trial." *Id*.

Defendant's basis for prejudice on appeal is that he exhausted his peremptory challenges. We are not persuaded by this argument. Defendant's bare assertion that he was prejudiced in this manner fails to meet his "heavier burden of showing that the error rises to the level of plain error." *Lawrence*, 365 N.C. at 516, 723 S.E.2d 333.

Defendant also contends that deviation from the statutory procedure constitutes reversible error *per se*. To support this contention, defendant relies on *Gray v. Mississippi*, 481 U.S. 648, 95 L. Ed. 2d 622 (1987). However, whatever support defendant draws from *Gray* is limited to capital cases. Accordingly, because defendant has failed to show prejudice, we hold that the trial court's deviation from the statutory procedure does not warrant a new trial.

## C. Instruction on Involuntary Manslaughter

Defendant's third contention is that the trial court erred

by failing to instruct the jury on the lesser-included offense of involuntary manslaughter. Defendant argues that because the evidence suggests he acted with at most culpable negligence, the trial court should have instructed the jury on involuntary manslaughter. We disagree.

Because defendant did not request an instruction on involuntary manslaughter and did not object to the instructions given at trial, we review for plain error. *State v. McCollum*, 157 N.C. App. 408, 412, 579 S.E.2d 467, 469 (2003), *aff'd*, 358 N.C. 132, 591 S.E.2d 519 (2004). As noted above, the plain error rule is to be applied cautiously, and only in exceptional cases where a fundamental error occurred such that the error had a probable impact on the jury's finding that the defendant was guilty. *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

The distinguishing difference between second-degree murder and manslaughter is the presence of malice in second-degree murder and its absence in manslaughter. *McCollum*, 157 N.C. App. at 412, 579 S.E.2d at 470. Defendant argues that the evidence showed he acted recklessly and with a disregard for human life and did not intend to kill Jewel. Thus, defendant argues, an instruction on involuntary manslaughter was necessary. However, malice can be implied where a defendant acted so recklessly or

wantonly "as to manifest depravity of mind and disregard for human life. In such a case, the homicide cannot be involuntary manslaughter, even if the assailant did not intend to kill the victim." *Id.* at 412-13, 579 S.E.2d at 570 (internal quotation marks and citation omitted).

We find *McCollum* to be squarely on point with our case. In that case, as here, the trial court submitted first-degree murder, second-degree murder, voluntary manslaughter, and acquittal to the jury, who returned a verdict of second-degree murder. The defendant did not request an instruction on involuntary manslaughter, nor did he object to the lack of such an instruction. This Court held that when the jury returned a verdict of second-degree murder, it necessarily negated a finding of the absence of malice:

> When the jury convicted defendant of second-degree murder and rejected voluntary manslaughter, it necessarily found that defendant acted with malice. A finding of malice precludes a finding of either voluntary manslaughter or involuntary manslaughter. Any asserted error in failing to instruct on involuntary manslaughter was harmless and does not rise to the level of plain error.

*McCollum*, 157 N.C. App. at 414, 579 S.E.2d at 471 (citation omitted). In finding defendant guilty of second-degree murder, the jury necessarily found beyond a reasonable doubt that

defendant acted with malice, rejecting the absence of malice necessary for involuntary manslaughter. The jury had an opportunity to find an absence of malice and did not. Thus, it cannot be said that had the jury been instructed on involuntary manslaughter, the jury would have reached a different verdict. Accordingly, we hold that the trial court did not plainly err in failing to instruct the jury on involuntary manslaughter.

### D. Self-Defense and Imperfect Self-Defense Instruction

Defendant's final argument is that the trial court erred in denying his request to instruct the jury on self-defense and imperfect self-defense. Because defendant requested jury instructions on self-defense and imperfect self-defense, we review *de novo*. *State v. Cruz*, 203 N.C. App. 230, 235, 691 S.E.2d 47, 50 (2010).

Perfect self-defense excuses a killing completely when it is shown at the time of the killing that:

> (1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

> (3) defendant was not the aggressor in

> bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and
>
> (4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Bush*, 307 N.C. 152, 158, 297 S.E.2d 563, 568 (1982). An instruction on imperfect self-defense arises when only the first two of the above elements are shown. *Id*. at 159, 297 S.E.2d at 568.

A defendant is entitled to an instruction on self-defense only where there is "any evidence in the record from which it can be determined that it was necessary or reasonably appeared to be necessary for him to kill his adversary in order to protect himself from death or great bodily harm." *Id*. at 160, 297 S.E.2d at 569. It is for the trial court to determine as a matter of law "whether there is any evidence that the defendant reasonably believed it to be necessary to kill his adversary in order to protect himself from death or great bodily harm." *Id*. In determining whether a self-defense instruction should have been given, we examine the facts in the light most favorable to the defendant. *State v. Moore*, 111 N.C. App. 649, 654, 432

S.E.2d 887, 889 (1993).

At no point during the trial did defendant testify that he thought it was necessary or reasonably necessary to kill Jewel in order to protect himself from death or great bodily harm. Defendant only testified that his wife was holding a stun gun and that he pushed her up against the bathroom cabinets to keep her from using the stun gun. Defendant was able to push the stun gun into Jewel's side and ultimately subdued her. He did not state that he feared for his life or that he feared he might suffer great bodily harm at any time during the altercation. Defendant's testimony does not suggest, neither explicitly nor implicitly, that it was necessary or reasonably necessary to kill his wife in order to avoid death or great bodily harm.

We find that the evidence taken in the light most favorable to defendant fails to show any circumstances that would suggest that defendant reasonably believed it was necessary or reasonably necessary for him to kill Jewel in order to avoid death or great bodily harm. Because defendant failed to satisfy the required elements for an instruction on self-defense or imperfect self-defense, we hold that the trial court did not err in refusing to submit those issues to the jury.

## III. Conclusion

For the reasons stated above, we conclude that the trial court did not commit prejudicial error.

No prejudicial error.

Judges ELMORE and DAVIS concur.