An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-348

Filed 18 February 2026

Durham County, No. 20CR054996-310

STATE OF NORTH CAROLINA

v.

RASHAWN HARWELL, Defendant.

Appeal by defendant from judgment entered 3 June 2024 by Judge Shamieka L. Rhinehart in Durham County Superior Court. Heard in the Court of Appeals 13 January 2026.

*Attorney General Jeff Jackson, by Assistant Attorney General Jeremy D. Lindsley, for the State-appellee.*

*Joseph P. Lattimore for defendant-appellant.*

GORE, Judge.

Defendant Rashawn Harwell appeals from a judgment entered upon a jury verdict finding him guilty of second-degree murder for the shooting death of Otha Ray Watson ("Ray") in Durham County on 13 September 2020. The State proceeded on a theory of acting in concert, alleging that defendant acted with two associates—Larry Harwell ("Little Larry") and Taylor Jones ("Taylor")—who fired the fatal shot as the

victim attempted to flee in his vehicle.

Defendant raises two issues on appeal: (1) whether the trial court erred in denying his motion to dismiss for insufficient evidence that he or anyone acting in concert with him fired the shot that killed the victim; and (2) whether the trial court erred in refusing his request to instruct the jury on involuntary manslaughter as a lesser-included offense.

This Court has jurisdiction to hear this appeal pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a), as defendant gave oral notice of appeal in open court following the entry of final judgment.

For the reasons stated herein, we discern no error and affirm the judgment of the trial court.

## I.

In the early morning hours of 13 September 2020, a shooting occurred at a car meetup in Durham.

Ray had driven his girlfriend, Shamara Lewis Watson ("Shamara"), to the gathering near a Cookout restaurant on Hillsborough Road. At some point, defendant arrived with two associates: Little Larry and Taylor.

Defendant approached Ray and challenged him to fight. Ray declined and returned to his car. Defendant followed, telling Ray, "I'll D.O.A. you." Shamara asked defendant to stop. Defendant then moved to the driver's side of the vehicle while Little Larry and Taylor positioned themselves at the front and passenger side. Ray

- 2 -

started the car and began to drive away.

The tobacco store's surveillance video captured what followed. As Ray's vehicle moved, defendant fired two shots. Shamara later testified that these shots could have gone "anywhere" and appeared to be "a warning." Little Larry and Taylor then fired multiple rounds at Ray's car as it traveled across the parking lot. The vehicle crossed Hillsborough Road and collided with a parked car at an auto dealership.

Responding officers encountered a chaotic scene, with people jumping into their cars and leaving at high speed. Inside the wrecked vehicle, officers found Ray with a gunshot wound to the back of his head. The medical examiner determined that a single gunshot caused fatal injuries to Ray's skull and brain. The bullet fragments recovered could not be matched to any firearm.

Investigators recovered 42 shell casings from the scene, which ballistic analysis linked to six different firearms. A .40 caliber casing found inside Ray's vehicle matched a handgun recovered from defendant's apartment. The .22 caliber casings were found in the Cookout parking lot, with the restaurant building between that location and Ray's path of travel.

A grand jury indicted defendant for first-degree murder. The State proceeded to trial on second-degree murder under a theory of acting in concert. The trial court denied defendant's motions to dismiss. Defendant requested an instruction on involuntary manslaughter; the trial court denied the request and instructed the jury on second-degree murder and voluntary manslaughter.

During deliberations, the jury submitted questions regarding proximate cause and acting in concert. The jury returned a verdict of guilty for second-degree murder. The trial court sentenced defendant to 207 to 261 months' imprisonment. Defendant appeals.

## II.

**A.**

Defendant argues the trial court erred in denying his motion to dismiss because the State failed to present sufficient evidence that he or anyone acting in concert with him fired the shot that killed Ray. We disagree.

We review the denial of a motion to dismiss de novo. *State v. Williams*, 362 N.C. 628, 632–33 (2008). The question is "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Scott*, 356 N.C. 591, 595 (2002). Evidence must be viewed in the light most favorable to the State. *State v. Dover*, 381 N.C. 535, 536 (2022). If the evidence raises only "a suspicion or conjecture," the motion must be allowed. *State v. Malloy*, 309 N.C. 176, 179 (1983).

Under an acting-in-concert theory, the State must show that defendant "acted together with another who did the acts necessary to constitute the crime pursuant to a common plan or purpose." *State v. Glover*, 376 N.C. 420, 427 (2020). The defendant need not commit the fatal act himself. *State v. Oxendine*, 187 N.C. 658 (1924).

Defendant contends the State failed to prove that Little Larry or Taylor—rather than another shooter—fired the fatal shot. We are not persuaded.

Surveillance video captured the incident. The footage shows defendant, Little Larry, and Taylor approach Ray's vehicle. As Ray attempted to leave, defendant fired two shots, and Little Larry and Taylor—positioned in front of and beside the car—immediately fired multiple rounds at the vehicle as it drove away.

The physical evidence corroborates this sequence. Investigators recovered 42 shell casings from the scene, linked to six different firearms. The .22 caliber casings were found in the Cookout parking lot, with the restaurant building between that location and Ray's direction of travel—making those shooters implausible sources of the fatal shot. Eleven additional shots audible on the video occurred after Ray's vehicle had already crashed. Little Larry and Taylor, by contrast, fired directly at Ray's car, at close range, as he fled.

The bullet fragments recovered from Ray's brain could not be matched to any firearm. But the State was not required to prove ballistic certainty. "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Thomas*, 295 N.C. App. 269, 274 (2024). The question is whether the evidence permits a reasonable inference of guilt; if so, "it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty." *Id.* at 275.

Viewing the evidence in the light most favorable to the State, a reasonable jury could conclude that Little Larry or Taylor—acting in concert with defendant—fired the shot that killed Ray. The trial court did not err.

**B.**

Defendant argues the trial court erred in refusing to instruct the jury on involuntary manslaughter. We discern no error.

We review this issue de novo. *State v. Matsoake*, 243 N.C. App. 651, 657 (2015). "An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." *State v. Brichikov*, 383 N.C. 543, 554 (2022). However, "the trial court need not submit lesser degrees of a crime to the jury when the State's evidence is positive as to each and every element of the crime charged and there is no conflicting evidence." *Id.*

The distinction between second-degree murder and involuntary manslaughter is malice. *State v. McCollum*, 157 N.C. App. 408, 412 (2003). When a deadly weapon causes death, malice is presumed unless rebutted by conflicting evidence. *Brichikov*, 383 N.C. at 555.

Defendant contends that Shamara's testimony—that his shots were "a warning" that "could have gone anywhere"—would permit a jury to conclude he acted recklessly rather than with malice. He argues that by firing warning shots and triggering the gunfire from Little Larry and Taylor, he committed a negligent act that

proximately caused Ray's death.

We are not persuaded. The State proceeded on acting in concert. The question is whether defendant acted with others who committed the killing pursuant to a common purpose. *See State v. Baldwin*, 276 N.C. App. 368, 373 (2021). Little Larry and Taylor fired directly at Ray's fleeing vehicle. No evidence suggested their actions were accidental, justified, or otherwise lacking in malice.

Defendant's own conduct also established more than recklessness. He approached Ray, challenged him to fight, threatened to "D.O.A." him, and fired a weapon as Ray attempted to leave. This activated the presumption of malice. *Brichikov*, 383 N.C. at 555. Defendant introduced no evidence to rebut it—the defense rested without presenting any witnesses or exhibits.

Defendant points to the jury's questions during deliberations as evidence that jurors struggled with his intent. But those questions sought clarification of legal concepts, not resolution of disputed facts. Moreover, the jury was instructed on voluntary manslaughter, which also does not require malice. The jury rejected that option.

The trial court did not err.

### III.

For the foregoing reasons, we hold that the trial court did not err in denying defendant's motion to dismiss or in refusing to instruct the jury on involuntary manslaughter.

NO ERROR.

Judges STROUD and FLOOD concur.

Report per Rule 30(e).