IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-156

Filed 5 March 2025

Mecklenburg County, Nos. 18 CRS 16909, 16911, 223051

STATE OF NORTH CAROLINA

v.

JAMAAL GRIFFIN, Defendant.

Appeal by defendant from judgments entered 18 May 2023 by Judge Patrick Thomas Nadolski in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 June 2024.

*Carolina Appeal, by Attorney Drew Nelson, for the defendant-appellant.*

*Attorney General Jeff Jackson, by Assistant Attorney General Caden W. Hayes, for the State.*

STADING, Judge.

Jamaal Griffin ("Defendant") appeals from final judgments entered against him pursuant to jury verdicts finding him guilty of first-degree murder and possession of a firearm by a felon. Defendant was also found guilty of one count of conspiracy to commit robbery with a dangerous weapon; however, the trial court arrested judgment on this conviction at sentencing. For the reasons below, we discern no error.

## I. Background

This matter concerns an armed robbery resulting in the killing of Churchill Zoker on 30 June 2018. A grand jury indicted Defendant for multiple offenses, including first-degree murder, possession of a firearm by a felon, and conspiracy to commit robbery with a dangerous weapon. Jury selection for Defendant's trial commenced on 1 May 2023. The parties agreed on twelve prospective jurors—including Mr. Stolz, to be seated as Juror No. 7. Next, the parties began selection of three prospective alternate jurors—Mr. Brent, Mr. Caldwell, and Mr. Spain. After questioning, defense counsel struck Mr. Caldwell but was satisfied with the other two alternates.

The next day, the parties reconvened to select a final alternate juror. But Mr. Stolz's wife had unexpectedly gone into labor, leading the trial court to excuse him from jury service. The State argued that another prospective juror from the jury venire[1] should replace Mr. Stolz since the jury had not yet been empaneled.[2]

---

[1] "Jury venire" is used synonymously with "jury pool" and "jury panel" in North Carolina. *See, e.g.*, *State v. Tirado*, 358 N.C. 551, 571, 599 S.E.2d 515, 530 (2004) (N.C. Gen. Stat. § 15A-1211 "uses the term 'panel' to refer to the entire jury pool or venire . . . .").

[2] Courts use both "empanel" and "impanel." *See United States v. Haymond*, 588 U.S. 634, 662–63, 139 S. Ct. 2369, 2388 (2019) (Alito, J., joined by Thomas, C.J., and Kavanaugh, J., dissenting) ("[T]here is simply no way that the federal courts could empanel enough juries to adjudicate all those proceedings, let alone try all those proceedings in accordance with the Sixth Amendment's Confrontation Clause."); *see also Yeager v. United States*, 557 U.S. 110, 118, 129 S. Ct. 2360, 2366 (2009) (citation omitted) ("Instead, a jury's inability to reach a decision is the kind of 'manifest necessity' that permits the declaration of a mistrial and the continuation of the initial jeopardy that commenced when the jury was first impaneled.").

According to the State, the procedure in N.C. Gen. Stat. § 15A-1214(g) (2023) was controlling:

> If at any time after a juror has been accepted by a party, and before the jury is impaneled, it is discovered that the juror has made an incorrect statement during voir dire or that some other good reason exists:
>
> . . . .
>
> (2) If the judge determines there is a basis for challenge for cause, he must excuse the juror or sustain any challenge for cause that has been made.
>
> . . . .
>
> Any replacement juror called is subject to examination, challenge for cause, and peremptory challenge as any other unaccepted juror.

Counsel for Defendant conceded the applicability of the statute but disputed its outcome. Instead, counsel proposed that Mr. Brent, one of the prospective alternate jurors, take Mr. Stolz's place, and a new alternate juror should be selected from the jury venire. Counsel for Defendant expressed concern that peremptory challenges were exhausted for the prospective twelve jurors, but noted her client retained an additional strike for any new prospective alternate juror.

The trial court ultimately agreed with the State's argument, deciding that another juror would be seated from the jury venire, and the prospective alternate jurors would remain in place. The trial court noted Defendant's objection. Defendant's counsel stated, "[w]e just really wanted to slide [Mr. Brent] over. But I've read the statute. The jury isn't impaneled. It seems like the statute is on point

- 3 -

in that." Following this discussion, the clerk called Ms. Nannini as a prospective juror to replace Mr. Stolz as prospective Juror No. 7, and both parties accepted her. Defendant's counsel renewed the objection:

> [DEFENDANT'S ATTORNEY]: Your Honor, just to preserve for the record that defense objects to taking someone f[rom] the general pool and putting them in seat number 7, rather than placing in alternate number 1 in seat number 7, and then replacing the other people. We want to preserve that for the record. I know I have been researching. I haven't found anything, but we think it's necessary to preserve that because the State is supposed to pass to us a set of complete -- 12 jurors. Obviously, they passed to us last week. We selected two alternates. What happened this morning happened. And the voir dire was reopened and we had to question -- instead of the ones we have -- we have to question one that wasn't passed to us with a complete pool, so we want to preserve that for the record.
>
> THE COURT: All right. Your objection is noted for the record. Anything else?
>
> [DEFENDANT'S ATTORNEY]: No, Your Honor. Thank you.

Later that day, the parties also accepted another prospective alternate juror, Mr. Young. Thereafter, all jurors and alternate jurors were officially empaneled.

During Defendant's case-in-chief, the trial court informed the parties that empaneled Juror No. 1, Ms. Emeram, had a "scheduling conflict," and expressed "trepidation" because this juror could have pressure to reach a verdict on an improper basis. During voir dire, all parties were aware of this possible conflict and agreed to accept Ms. Emeram because they did not foresee the length of the trial. After

- 4 -

questioning Ms. Emeram, a bench conference was held, and the trial court excused her without objection from the parties. One of the alternate jurors, Mr. Brent, was then seated as Juror No. 1. Following deliberations, the jury found Defendant guilty of first-degree murder, possession of a firearm by a felon, and conspiracy to commit robbery with a dangerous weapon. Defendant gave notice of appeal in open court.

## II. Jurisdiction

Jurisdiction is proper with our Court since Defendant appeals from a "final judgment of a superior court," and "entered a plea of not guilty to a criminal charge, and . . . [was] found guilty of a crime." *See* N.C. Gen. Stat. §§ 7A-27(b)(1) (2023) and 15A-1444(a) (2023).

## III. Analysis

Defendant asserts a single issue for appeal: whether the trial court committed error by filling Mr. Stolz's seat with someone from the jury venire rather than one of the prospective alternate jurors. He maintains the trial court's decision contravenes N.C. Gen. Stat. § 15A-1215(a) (2023) and amounts to error per se or structural error. After careful consideration, we disagree.

"When an alleged statutory violation by the trial court is properly preserved, either by timely objection or . . . by operation of rule of law, we review for prejudicial error pursuant to N.C. [Gen. Stat.] § 15A-1443(a)." *State v. Austin*, 378 N.C. 272, 276–77, 861 S.E.2d 523, 528 (2021); *e.g., State v. Jaynes*, 353 N.C. 534, 544–45, 549 S.E.2d 179, 189 (2001) ("[W]hen a trial court acts contrary to statutory mandate and

the defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial.").[3]   "[I]f the [preserved] error relates to a right *not arising* under the United States Constitution, . . . review requires the defendant to bear the burden of showing prejudice." *Austin*, 378 N.C. at 277, 861 S.E.2d at 528 (citations omitted and emphasis added).  "[A] new trial does not automatically follow a finding of statutory error." *State v. Garcia*, 358 N.C. 382, 406, 597 S.E.2d 724, 742–43 (2004).  Indeed, "[t]his Court has consistently required that defendants claiming error in jury selection procedures show prejudice in addition to a statutory violation before they can receive a new trial." *Id.* at 406, 597 S.E.2d at 743.  To show prejudice, a "defendant must prove that a reasonable possibility exists that, had the error not been committed, a different result would have been reached at trial." *Id.* at 407, 597 S.E.2d at 743 (quoting N.C. Gen. Stat. § 15A-1443(a)).

In criminal cases, jurors are selected under N.C. Gen. Stat. § 15A-1214(a) (2023), which provides: "The clerk, under the supervision of the presiding judge, must call jurors from the panel by a system of random selection which precludes advance knowledge of the identity of the next juror to be called."  The trial court may permit the seating of one or more alternate jurors under N.C. Gen. Stat. § 15A-1215(a).  Those alternate jurors "must be sworn and seated near the jury with equal

---

[3] Defendant properly objected on statutory grounds and later renewed this objection before the jury was empaneled.

opportunity to see and hear the proceedings. . . ." *Id.* And, "[i]f at any time prior to a verdict being rendered, any juror dies, becomes incapacitated or disqualified, or is discharged for any other reason, an alternate juror becomes a juror, in the order in which selected, and serves in all respects as those selected on the regular trial panel." *Id.* But if the judge determines there is a basis for challenge for cause "at any time after a juror has been accepted by a party, and before the jury is impaneled, it is discovered that . . . some . . . good reason exists," "he must excuse the juror." N.C. Gen. Stat. § 15A-1214(g). Ultimately, "[t]he intended result of jury selection is to empanel an impartial and unbiased jury." *Garcia*, 358 N.C. at 407, 597 S.E.2d at 743. Trial judges have "broad discretion to see that a competent, fair and impartial jury is impaneled . . . ." *State v. Johnson*, 298 N.C. 355, 362, 259 S.E.2d 752, 757 (1979). They also have "the power to regulate and supervise the selection of a jury so that the defendant and the State have the benefit of trial by an impartial jury." *State v. McLamb*, 313 N.C. 572, 575, 330 S.E.2d 476, 478 (1985).

Latching onto the language of N.C. Gen. Stat. § 15A-1215(a)—"any time prior to a verdict being rendered, any juror dies, becomes incapacitated or disqualified, or is discharged for any other reason, an alternate juror becomes a juror"—Defendant claims that the trial court erred in selecting someone from the jury venire to replace Mr. Stolz, rather than seating one of the prospective alternate jurors. Defendant claims this subsection is effective after the "initial twelve jurors have been selected." Stated another way, Defendant proffers that the duties of an alternate juror are

triggered before the jury is empaneled. This necessarily presents a novel argument for our consideration: whether those prospective, yet-to-be members of the to-be-empaneled jury who have been accepted by each party, are properly classified as jurors or alternate jurors.

The criminal jury selection statutes do not offer a precise definition of "juror" or "alternate juror." *See* N.C. Gen. Stat. Ch. 15A, Subch. XII, Art. 72. We therefore consider the plain meaning of "juror" or "alternate juror" in view of Article 72. *State v. Langley*, 371 N.C. 389, 395, 817 S.E.2d 191, 196 (2018) (internal quotation marks and citation omitted) ("The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish."). The term "juror" "should be distinguished from *potential juror* or[4] *veniremember*." Bryan A. Garner, *Garner's Modern English Usage* 635 (5th ed. 2022) (ellipses omitted). "The difference is that a *potential juror* or *veniremember* hasn't yet been selected to sit on the jury . . . a *juror* is someone who has been empaneled on the jury." *Id.* It follows that a plain-meaning analysis disfavors Defendant's urged position because an alternate juror does not become so until empaneled. This definitional analysis accords with the language of N.C. Gen. Stat. § 15A-1214(g).

---

[4] "Or" is a disjunctive term, indicating application to one of the two categories listed. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012).

Defendant also disputes the applicability of N.C. Gen. Stat. § 15A-1214(g), as he maintains that N.C. Gen. Stat. § 15A-1215(a) is controlling. Subsection 15A-1214(g) discusses discovered concerns regarding a prospective juror amounting to a basis for a challenge for cause after a juror has been accepted, but not yet empaneled. *See* N.C. Gen. Stat. § 15A-1214(g). While the circumstances presented here are unique, this subsection applies since it squarely addresses scenarios within the procedural posture of the present matter and provides the proper course of action. *See id.* ("any time after a juror has been accepted . . . and before the jury is impaneled"; "[a]ny replacement juror called is subject to examination, challenge for cause, and peremptory challenge as any other unaccepted juror."). A trial court judge is permitted to "excuse a juror without challenge by either party if he determines that grounds for challenge for cause are present." *Id.* § 15A-1211 (2023). The trial court did not explicitly state he was exercising his statutory authority to challenge this juror for cause, but the record makes that determination readily apparent. *See id.* § 15A-1212(9). In its effort to resolve this quandary, the trial court followed the protocol provided in subsection 15A-1214(g)—he called a replacement juror from the jury venire, and they were "subject to examination, challenge for cause, and peremptory challenge as any other unaccepted juror."

In any event, nothing about Defendant's contention shows that he was prejudiced against having a competent, fair, and impartial jury. *See State v. Lawrence,* 352 N.C. 1, 13, 530 S.E.2d 807, 815 (2000) (holding that no prejudice was

shown despite the trial court's direct deviation from statutory jury selection procedures). In fact, in his brief, Defendant does not address prejudice, instead he asserts that the applicable standard of review does not require a showing of prejudice.

To that end, Defendant argues that the violation was error per se or structural error. *See State v. Lawrence*, 365 N.C. 506, 514, 723 S.E.2d 326, 332 (2012) ("Like structural error, error per se is automatically deemed prejudicial and thus reversible without a showing of prejudice."). "In a limited class of cases, the [United States Supreme] Court has . . . held that 'some errors necessarily render a trial fundamentally unfair.'" *Id.* at 513–14, 723 S.E.2d at 331 (quoting *Rose v. Clark*, 478 U.S. 570, 577, 106 S. Ct. 3101, 3106 (1986)). These types of errors are referred to as "structural" and "require automatic reversal regardless of a showing of prejudice . . . because they 'affect[ ] the framework within which the trial proceeds, rather than simply an error in the trial process itself[.]'" *Id.* (citations omitted).

> The Supreme Court has noted six instances where structural error had been found: (1) "total deprivation of the right to counsel"; (2) "lack of an impartial trial judge"; (3) "unlawful exclusion of grand jurors of defendant's race"; (4) violation of "the right to self-representation at trial"; (5) violation of "the right to a public trial"; and (6) "erroneous reasonable-doubt instruction to jury."

*State v. Hamer*, 377 N.C. 502, 506, 858 S.E.2d 777, 781 (2021) (citation omitted). "North Carolina courts also apply a form of structural error known as error per se. Like structural error, error per se is automatically deemed prejudicial and thus

reversible without a showing of prejudice." *Lawrence*, 365 N.C. at 514, 723 S.E.2d at 331–32.

Contrary to Defendant's argument, our relevant jurisprudence—citing statutory error—does not allow us to dispense of the prejudice prong. *See, e.g.*, *Garcia*, 358 N.C. at 406, 597 S.E.2d at 743 ("This Court has consistently required that defendants claiming error in jury selection procedures show prejudice in addition to a statutory violation before they can receive a new trial."); *see also State v. Golphin*, 352 N.C. 364, 412, 533 S.E.2d 168, 202 (2000) ("However, assuming, without deciding, that the trial court violated [N.C. Gen. Stat.] § 15A-1214(a), defendants cannot show prejudicial error."); *see also State v. Woodley*, 286 N.C. App. 450, 465–66, 880 S.E.2d 740, 751 (2022) (overruling jury selection argument because defendant failed to show prejudice).

For example, in *Garcia*, our Supreme Court determined that "the procedures employed at trial violated the express requirements of N.C. [Gen. Stat.] § 15A-1214(f)." 358 N.C. at 406, 597 S.E.2d at 742. But since the defendant "made no attempt, either in written brief or at oral argument . . . to show how the identified statutory violation prejudiced his case[,]" the Court overruled his argument. *Id.* at 407, 597 S.E.2d at 743. Similarly, in *State v. Gurkin*, our Court determined that "the trial court violated the statutorily mandated procedure for jury selection." 234 N.C. App. 207, 214, 758 S.E.2d 450, 455 (2014). Yet since the defendant failed to show or argue prejudice, we held "that the trial court's deviation from the statutory procedure

does not warrant a new trial." *Id.* at 214, 758 S.E.2d at 456. Since Defendant failed to demonstrate prejudice, his contentions as to statutory error are overruled. *See Austin*, 378 N.C. at 276–77, 861 S.E.2d at 528.

Defendant also contends that the trial court's failure to adhere to N.C. Gen. Stat. § 1215(a) infringed on his constitutional right to a fair and impartial jury. To that end, Defendant argues that the trial court committed either error per se or structural error because he was tried by an improperly constituted jury. *See State v. Poindexter*, 353 N.C. 440, 444, 545 S.E.2d 414, 416 (2001) ("A trial by a jury that is improperly constituted is so fundamentally flawed that the verdict cannot stand."); *see also Garcia*, 358 N.C. at 410, 597 S.E.2d at 745 ("Defendant has shown only a technical violation of the state jury selection statute. Without more, this statutory violation is insufficient to support a claim of constitutional structural error."). Despite Defendant's claim, he did not raise this argument at trial, denying the court the opportunity to pass upon the issue. *See* N.C. R. App. P. 10; *see also, e.g., State v. Smith*, 359 N.C. 199, 208, 607 S.E.2d 607, 615 (2005) (overruling defendant's assignment of error because he "failed to object . . . on constitutional grounds"). In fact, when Defendant objected at trial, he only objected on statutory grounds. As a consequence, Defendant failed to preserve his constitutional issue for appellate review. *See State v. Fleming*, 350 N.C. 109, 122, 512 S.E.2d 720, 730 (1999); *see also State v. King*, 342 N.C. 357, 364, 464 S.E.2d 288, 293 (1995); *see also State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) ("[A] constitutional question which is

not raised and passed upon in the trial court will not ordinarily be considered on appeal.").

Defendant implores us to exercise Rule 2 of the Appellate Rules of Procedure to review the merits of this argument. Under Rule 2, this Court may suspend the Appellate Rules "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest." N.C. R. App. P. 2. Case law addresses the appropriateness of discretionarily invoking Rule 2, which "relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and only in such instances." *State v. Hart*, 361 N.C. 309, 315–16, 644 S.E.2d 201, 205 (2007) (citations and quotation marks omitted). "[T]he exercise of Rule 2 was intended to be limited to occasions in which a fundamental purpose of the appellate rules is at stake, which will necessarily be rare occasions." *Id.* at 316, 644 S.E.2d at 205 (citations and internal quotation marks omitted). "This assessment—whether a particular case is one of the rare 'instances' appropriate for Rule 2 review—must necessarily be made in light of the *specific circumstances of individual cases and parties*, such as whether 'substantial rights of an appellant are affected.'" *State v. Campbell*, 369 N.C. 599, 603, 799 S.E.2d 600, 602 (2017) (citations omitted). Put another way, "precedent cannot create an automatic right to review via Rule 2. Instead, whether an appellant has demonstrated that his matter is the rare case

meriting suspension of our appellate rules is always a discretionary determination to be made on a case-by-case basis." *Id.* at 603, 799 S.E.2d at 603.

Defendant urges that we should invoke Rule 2 because allowing his conviction by an improperly constituted jury "would represent manifest injustice." But nothing in the record or Defendant's brief demonstrates "exceptional circumstances" sufficient to justify suspending or varying the rules. *Hart*, 361 N.C. at 315, 644 S.E.2d at 205. Although a constitutional right is a substantial right, Defendant has failed to demonstrate error relating to a substantial right. *Cf. State v. Bursell*, 372 N.C. 196, 201, 827 S.E.2d 302, 306 (2019) (determining that "a constitutional right, such as the Fourth Amendment right implicated here, is a substantial right" and since "the State concede[d] that the trial court committed error relating to a substantial right, the Court of appeals did not abuse its discretion by invoking Rule 2."). Rather, Defendant is no different than other litigants who failed to preserve their constitutional arguments and failed to specifically argue manifest injustice on appeal. *See, e.g., State v. Ricks*, 378 N.C. 737, 742, 862 S.E.2d 835, 839 (2021) (upholding our Court's decision, denying the invocation of Rule 2, "because the defendant was 'no different from other defendants who failed to preserve their constitutional arguments' and failed to argue 'any specific facts' to demonstrate that invoking Rule 2 would prevent 'manifest injustice.'").

In our discretion, we decline to invoke Rule 2. *See State v. Barnes*, 278 N.C. App. 245, 248, 862 S.E.2d 852, 854 (2021) ("An appellate court's decision to

invoke Rule 2 and suspend the appellate rules is always an exercise of discretion."). Consequently, Defendant's unpreserved constitutional argument is dismissed.

## IV.   Conclusion

For the above reasons, we overrule Defendant's assignment of statutory error. *See* N.C. Gen. Stat. §§ 15A-1211, -1212, -1214, -1215(a) and -1443(a).  We hold that Defendant failed to preserve his constitutional argument for our review under N.C. R. App. P. 10.  Since the present circumstances do not warrant invoking Rule 2, we decline further review of the matter.


NO ERROR.

Judges STROUD and COLLINS concur.